[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16600
Non-Argument Calendar
_____

D.C. Docket No. 9:12-cr-80124-WJZ-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GARY SCHATZ,
a.k.a. Gary K. Schatz,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 25, 2013)

Before KRAVITCH, ANDERSON and DUBINA, Circuit Judges.

PER CURIAM:

Gary Schatz appeals his conviction for attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), asserting several errors during his jury trial warrant reversal.  After careful review, we affirm.

I.

At Schatz's trial, the government called Detective Charles Ramos of the Special Victims Unit of the Boykin Beach, Florida, Police Department.  Ramos testified that, during his investigation, he posed as a 15-year-old boy on a mobile phone social-networking application called Boyahoy.  The program allows users to locate other users nearby, view those users' online profiles, and send and receive instant messages.  Ramos established an account using the name "Rick," uploading a photograph of another officer, who was 15 years old in the photo, as Rick's profile picture.  Boyahoy's application restricts users to those over 18, so Ramos entered a birthday indicating Rick was of age.  In Rick's profile, however, Ramos entered, "I'm 18 years old minus three years.  Get it?  Hee-hee."

Ramos testified that he soon received an instant message from an individual named Gary (later identified as Schatz).  Schatz's profile stated that he "would like to find a nice boy to chill with."  Detective Ramos, playing the role of Rick, exchanged messages with Schatz.  In one, Schatz asked whether Rick was in college.  Rick answered that he was in high school and was planning on attending college "[i]n a couple of years."  Soon, Schatz sent Rick his telephone number, and

2

the two exchanged text messages.   In three of those exchanges, Rick made reference to being only 15 years old.  Schatz asked Rick if they could meet, suggesting they have sex.  Ramos apprehended Schatz at the location where Schatz had agreed to meet Rick.

At trial, the government also called Richard Klein, who testified that, beginning when he was 12, he had sexual interactions with Schatz.  He testified that his mother found out when he was 14 and called police.  Initially, Klein told police what happened but recanted his testimony days later.  Klein testified that, when he recanted, he was still under Schatz's persuasion.  He continued to see Schatz until he was about 15 years old.

Schatz also testified, denying he knew "Rick" was 15 years old.  He said he believed Rick to be at least 18 because he was on Boyahoy, which banned underage users, and because he looked 18 in his photograph.  Schatz said he never looked at Rick's profile statement about being underage and that he was distracted when Rick told him he was 15.

The jury ultimately found Schatz guilty, and the district court sentenced him to 264 months' imprisonment.  This is Schatz's appeal.

## II.

Schatz first contends the district court erred by failing to state on the record the specific reasons for admitting Klein's testimony, which the government

3

introduced under Federal Rule of Evidence 404(b), before admitting it (rather than, as the court did, afterwards).  Although Schatz objected to the introduction of Klein's testimony, he did not object to the timing of the court's enunciation of its reasons for doing so.  Accordingly, we review the court's failure to give specific reasons for admitting the testimony beforehand only for plain error.  *See United States v. Madruga*, 810 F.2d 1010, 1014 (11th Cir. 1987) ("[T]o preserve objections to admissibility of evidence, [the] objection must state specific grounds; otherwise, review is only for plain error.").  To reverse, we must find "(1) error, (2), that is plain, . . . (3) that affects [the defendant's] substantial rights," and "(4) [that] seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Baker*, 432 F.3d 1189, 1202-03 (11th Cir. 2005) (internal quotation marks omitted).

Schatz relies on *United States v. Youts*, 229 F.3d 1312, 1318 (10th Cir. 2000), in which the Tenth Circuit stated "that the court's Rule 404(b) articulation must occur *prior* to its decision whether to admit the evidence."  This is "to ensure that the decision to admit or exclude be made *only after* issues and reasons are exposed and clearly stated."  *Id.* (internal quotation marks omitted).  The reasoning in *Youts* is persuasive, but, unfortunately for Schatz, *Youts* could not make the error he identifies plain.  "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no

4

plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003). As a result, we cannot reverse Schatz's conviction on this basis.

III.

Schatz next argues the district court limited his cross-examination of Klein in violation of his rights under the Sixth Amendment's Confrontation Clause. We review a district court's limitation of cross-examination for an abuse of discretion. *United States v. Diaz*, 26 F.3d 1533, 1539 (11th Cir. 1994). The district court abuses its discretion if the jury would have had a "significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *Id.* (internal quotation marks omitted).

At trial, Schatz's counsel cross-examined Klein, attempting to establish that Klein had a strong motive to lie, including a financial interest (a potential civil suit against Schatz) and a retributive interest. Schatz argues the district court limited counsel's lines of questioning, and, as a result, he was unable to expose Klein's credibility problems. We do not agree. Schatz's counsel asked Klein *four times* about a potential civil suit, but Klein responded that he had not contemplated a civil suit against Schatz and that no one in his family had pressured him to do so. The government even asked Klein whether he was seeking civil damages against Schatz when he finally gave a sworn statement against Schatz in 2009, and Klein

5

replied that he was not.  Schatz's counsel also elicited testimony about Klein's potential retributive interests in testifying against Schatz.  On cross-examination, Klein admitted he eventually sought criminal charges against Schatz three years after he originally recanted his story to police but no prosecution followed.  He admitted he wanted to testify against Schatz in this case and that his mother wanted him to testify as well.  Defense counsel clearly had the opportunity to, and did, pursue the lines of cross-examination Schatz now says he was denied.  That Klein did not answer in the way Schatz wanted is of no moment.  Schatz identifies nothing further he could have presented that may have changed the jury's view of Klein's credibility.

## IV.

Schatz next asserts the district court erroneously declined to declare a mistrial during Detective Ramos's testimony.  Ramos described his investigation after Schatz's arrest and told the jury he obtained a search warrant for Schatz's mobile phone.  Counsel for the government asked "how that works," and Ramos responded:  "As most phones do . . . this phone had a pass code lock. . . . .  Since we did not know the password for the phone and the defendant did not give it to us[,] we enlisted the help of Google."  Schatz objected, arguing Ramos was improperly commenting on his right to remain silent and moved for a mistrial.  The

6

court denied the motion but gave the following curative instruction to which counsel did not object:

> The last answer by Officer Ramos did implicate Mr. Schatz's right to remain silent. I instruct you that this was entirely improper under the United States Constitution where a defendant has the right to remain silent. The court orders that answer stricken from the record.
> I further instruct you to disregard the answer and you are not to consider the answer in deciding this case for or against the government or for or against Mr. Schatz.

We review a district court's refusal to declare a mistrial based on a comment regarding a defendant's right to remain silent for an abuse of discretion. *United States v. Dodd*, 111 F.3d 867, 869 (11th Cir. 1997). "A comment is deemed to be a reference to a defendant's silence if it was the prosecutor's manifest intention to refer to the defendant's silence or if it was of such a character that the jury would naturally and necessarily understand it to be a comment on the defendant's silence." *Id.* (internal quotation marks omitted). Schatz contends Ramos must have intended to comment on Schatz's silence. And he argues the jury necessarily would have understood Ramos's statement as a comment on his silence. Finally, Schatz asserts the court's curative instruction did more harm than good by drawing attention to Ramos's impermissible comment.

We do not agree that Ramos's one-off comment, combined with the court's curative instruction, demanded a mistrial. Ramos made the comment to preface his technical discussion of how he went about extracting incriminating information

7

from Schatz's mobile phone.  And there is no manifest intention to comment on a defendant's silence "if some other explanation for [the] remark is equally plausible."  *United States v. Swindall*, 971 F.2d 1531, 1551-52 (11th Cir. 1992) (internal quotation marks omitted).  There is also no indication the jury necessarily would have understood the statement to be a comment on Schatz's silence.  Ramos did not say Schatz refused to give his password, and he did not discuss Schatz's failure to do so at length.  This is especially so in light of the court's curative instruction, which Schatz cannot show was plainly erroneous.[1]  *See Dodd*, 111 F.3d at 870 ("Where the district court gives a curative instruction, the district court's refusal to declare a mistrial will not be overturned unless the evidence is so highly prejudicial as to be incurable.").  The court struck Ramos's entire answer from the record and asked the jury not to consider it at all in deciding Schatz's guilt or innocence.  "We presume that juries follow the instructions given to them." *United States v. Townsend*, 630 F.3d 1003, 1013-14 (11th Cir. 2011).  The district court accordingly did not abuse its discretion in declining to declare a mistrial.

## V.

Next, Schatz asserts the government's misconduct during closing argument resulted in prejudice warranting a new trial.  He contends the government

---

[1]  The government contends Schatz invited any error in the court's curative instruction by affirmatively stating he did not object to it.  We are doubtful the doctrine of invited error applies. In any event, because we conclude Schatz's contentions fail even if we choose to review them for plain error, we decline to conclude the error was invited.

improperly shifted the burden of proof, alluded to evidence not in the record, and made an unfounded personal attack. We review *de novo* claims of prosecutorial misconduct. *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). "To establish prosecutorial misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Id.* (internal quotation marks omitted). "When the record contains sufficient independent evidence of guilt, any error is harmless." *Id.*

Even assuming the government's comments at closing argument were improper, we conclude any error was harmless because there was sufficient independent evidence of Schatz's guilt. A defendant is guilty of attempted enticement if he, using any means of interstate commerce, knowingly attempts to entice a minor to engage in any sexual activity. 18 U.S.C. § 2422(b). Detective Ramos testified that Schatz, using his mobile phone (a means of interstate commerce), initiated contact with Ramos's alias, Rick. Schatz asked Rick to meet him, said they could have sex, and coordinated the details of the meeting.

Schatz's defense was that he did not do any of this knowing Rick was a minor, but the government presented overwhelming evidence of intent as well. Schatz continued talking to Rick even when Rick said three times that he was only 15 years old. In one exchange, Rick said, "being 15 I have not done much," and asked whether that was alright. Schatz responded: "For sure." Klein's testimony

corroborated Schatz's intent to pursue a minor.  Further, the jury was entitled to disbelieve Schatz's testimony that he did not know Rick was a minor and consider Schatz's denial as substantive evidence of his guilt.  *See United States v. Kendrick*, 682 F.3d 974, 985 (11th Cir. 2012).  Because overwhelming independent evidence supported each element of a § 2422(b) conviction, any error during closing argument was harmless.

## VI.

Finally, Schatz argues the errors detailed above cumulatively denied him the right to a fair trial.  "The cumulative error doctrine provides that an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal."  *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted).  "The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error – courts look to see whether the defendant's substantial rights were affected."  *Id.* (internal quotation marks omitted).  Schatz cannot prevail on his claim that cumulative error deprived him of a fair trial.  As we detailed above, the evidence of his guilt was overwhelming.

## VII.

For the foregoing reasons, Schatz's conviction is

**AFFIRMED.**

10