302 Ga. 6
FINAL COPY

S17A1103.  BREWNER v. THE STATE.

GRANT, Justice.

Appellant Brian Joseph Brewner was convicted of murder and numerous other crimes in connection with an August 2014 home invasion in which victim Adam Schrier was shot and killed and two other victims were injured.  Brewner now appeals, asserting that he was denied his constitutional right to be present at certain stages of the proceedings; that the trial court erred in admitting certain evidence; that his trial counsel provided constitutionally ineffective assistance; and that the evidence was insufficient to support his convictions.  Finding no error, we affirm.[1]

---

[1]  In November 2014, Brewner was indicted in Gwinnett County, together with four other indictees, on charges of malice murder, felony murder, aggravated assault, burglary, first-degree home invasion, conspiracy to commit robbery, armed robbery, false imprisonment, first-degree cruelty to children, and possession of a firearm by a first offender probationer.  Brewner was re-indicted for the same offenses in August 2015.  At the conclusion of an eight-day jury trial in October 2015, Brewner was convicted on all of the 18 counts in which he was named.  He was sentenced to life imprisonment without the possibility of parole, plus a total of 50 consecutive years to serve.  Brewner filed a motion for new trial on October 22, 2015, which he amended on October 29, 2015 and May 16, 2016.  Following a hearing on June 8, 2016, the motion for new trial was denied.  Brewner filed a timely notice of appeal on October 20, 2016, which he amended on January 17, 2017.  This appeal was docketed to this

I.

Viewed in the light most favorable to the jury's verdicts, the evidence shows that in the early morning hours of August 6, 2014, a group of men forcibly entered Adam Schrier's home. Schrier's girlfriend, Jami Smith, had arisen around 5:30 a.m. and gone to the basement-level garage to smoke a cigarette. Hearing strange noises on the main floor, Smith went back up the stairs and was confronted by a man who hit her in the head with a gun and demanded to know where "the money" was. When Smith responded that she did not know, he shot her in the leg and dragged her upstairs to the main floor. Another man with a gun confronted Smith's daughter Madison on the second floor of the home and dragged her downstairs. Mother and daughter were forced to lie on the living room floor, where Schrier, who had also been shot, was also lying. The men again asked where the money was; one stated that he had been told that there was $40,000 in the home. Smith told the men she had money in her purse upstairs, which the men took. The assailants bound Smith and Madison's arms and legs with duct tape, and one fired a gun; the bullet traversed Smith's shoulder and struck Madison's arm. The men then left, and Smith was able to unbind Madison's legs so that Madison

Court's April 2017 term and was orally argued on June 26, 2017.

2

could retrieve a phone for Smith to call 911. Police and paramedics responded, but Schrier died at the scene of a gunshot wound to the chest.

The State presented evidence showing that the home invasion arose from a complicated web of drug-related transactions. In mid-July 2014, law enforcement conducted a drug bust at the apartment of Becky Banner, who was involved in a methamphetamine trafficking operation supplied by a Mexican drug cartel. While the bust was in progress, Becky's son Bryan drove up to his mother's apartment, realized what was happening, and drove to Becky's other residence. Parked outside this house was a Chevy Blazer in which Becky was storing five kilos of methamphetamine — Becky's "last drop" — which Bryan retrieved. Bryan then got his friend, victim Schrier, to hide the drugs for him in a storage unit near Schrier's home. Within a week, Bryan had sold most of the drugs.

Jamie Staples, who was also connected with the drug operation, knew that Bryan had taken the drugs from the Chevy Blazer, but believed that they were being stored at Schrier's home. Staples testified at trial that, during the week prior to the crimes, he met with Appellant Brewner several times to discuss recovering the drugs, and any money from the sale of the drugs, from Schrier's home. Staples had been acquainted with Brewner since 2010 and

3

often purchased drugs from him. In 2013, to recover a debt owed by Staples, Brewner had dispatched a crew of men to invade Staples' home, where Staples was bound, beaten, and robbed of $5,500 and three ounces of meth. Brewner later apologized to Staples over the incident.

At the time he and Staples were devising the Schrier home invasion, Brewner was staying at a La Quinta hotel with his girlfriend, Charlice Roberts. Roberts testified that Staples visited their hotel room several times during the week before the crimes and that Staples and Brewner were discussing a plot to recover drugs and money from Schrier's home. Roberts also testified that during the night before the early-morning crimes, co-indictees Devon Jenkins and Pierre Scott visited Brewner. Roberts testified that Jenkins expressed excitement at the prospect of making money and was carrying a gun.

Neighbors of Schrier reported seeing a white Dodge truck parked outside Schrier's home with its engine running that morning around the time of the crimes. One of these witnesses, whose suspicions were aroused, recorded the Tennessee tag number of the vehicle, and investigators later determined that on the afternoon following the crimes a truck with that tag number had been parked outside the Congress hotel, which was adjacent to

the La Quinta hotel. Video surveillance footage from the Congress hotel at 6:35 on the morning of the crimes showed a white Dodge Ram truck pulling in followed by a white Toyota Camry with tinted windows; three males exited the truck and got into the Camry, which drove away. Testimony established that Roberts owned a white Toyota Camry with tinted windows, which Brewner often drove and had access to at the time of the crimes. A vehicle matching this description was observed making a sudden U-turn on Schrier's street around the time of the crimes. Roberts told police that a female in Tennessee had rented the white truck for Brewner, and investigators matched the truck's tag number to a vehicle that had gone missing in mid-July from a Chattanooga rental car company.

A few weeks after the crimes, Staples was arrested on drug trafficking charges, and in subsequent police interviews he implicated Brewner in the crimes. With assistance from Staples, Police Detective Bobby Johnson located Brewner in a vehicle in a motel parking lot. When the detective approached him on foot, Brewner drove the vehicle at the officer and then fled. Roberts, who was left behind in the parking lot, submitted to police questioning and confirmed Brewner's knowledge of the robbery plot, though she claimed he had disavowed any participation in it. Ultimately, at the

urging of Roberts, Brewner telephoned Detective Johnson to discuss the crimes; these conversations were recorded. Though Brewner consistently denied being present for the crimes at Schrier's home, he admitted introducing Staples to Jenkins to help Staples recover the five kilos of meth, and he also admitted to previously robbing Staples over a drug debt.

The evidence described above was clearly sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Brewner was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Though Brewner may not have been present for the home invasion, there was ample evidence of his knowledge of and participation in the planning of the crimes, and his contact with and assistance to the perpetrators before and after the crimes occurred. See OCGA § 16-2-20 (one may be culpable for commission of a crime if he "[i]ntentionally aids or abets in the commission of the crime" or "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime").

## II.

Brewner contends that he was denied his right under the Georgia Constitution to be present at certain "critical stages" of his trial proceedings.

"Embodied within the constitutional right to the courts is a criminal defendant's right to be present and see and hear all the proceedings which are had against him on the trial before the Court." *Ward v. State*, 288 Ga. 641, 645 (4) (706 SE2d 430) (2011) (citations and punctuation omitted). Violations of this due process right are presumed prejudicial, and, absent a waiver by the defendant, require a new trial. *Sammons v. State*, 279 Ga. 386, 387 (2) (612 SE2d 785) (2005). Here, however, there was no violation of Brewner's right to be present.

"The right to be present attaches 'at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure.'" *Huff v. State*, 274 Ga. 110, 111 (2) (549 SE2d 370) (2001) (punctuation omitted). Thus, a "critical stage" of a criminal proceeding is defined as "one in which the defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way." *Fortson v. State*, 272 Ga. 457, 458 (1) (532 SE2d 102) (2000) (punctuation omitted); accord *Campbell v. State*, 292 Ga. 766, 770 (4) (740 SE2d 115) (2013) (right to be present exists where "a fair and just hearing would be thwarted by the defendant's absence"). Proceedings during which the jury is selected or

7

modified, for example, are a critical stage at which the right to be present attaches. *Sammons*, 279 Ga. at 387 (2); *Hanifa v. State*, 269 Ga. 797, 807 (6) (505 SE2d 731) (1998). On the other hand, pre-trial hearings and bench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury instructions, ordinarily do not implicate the right to be present. See, e.g., *Campbell,* 292 Ga. at 770 (4) (pre-trial discussion of motions regarding the scope of cross-examination and suppression of the defendant's statement were not critical stages at which right to be present attached); *Huff*, 274 Ga. at 111-112 (2) (jury charge conference and in-chambers discussion of legal matters were not critical stages).

Brewner contends that he was denied his constitutional right to be present when the trial court ruled on the State's motion to admit evidence pursuant to OCGA § 24-4-404 (b) and when the court, in his absence, excused a prospective juror due to a family emergency. Neither contention is correct.

Regarding the 404 (b) ruling, the record reflects that the trial court held a pre-trial motions hearing approximately one month before trial at which several motions were argued, including the State's motion to admit 404 (b) evidence. In this motion, the State sought leave to introduce testimony

regarding (1) Brewner's involvement in past drug dealings and (2) his participation in the 2013 home invasion and robbery of Staples. At the conclusion of the hearing, the trial court reserved ruling on the motion and directed the State to provide, as an aid in the court's decision-making, the recordings of Detective Johnson's phone conversations with Brewner and his interview with Staples. The trial court never did issue any express ruling on the 404 (b) motion, either by written order or in open court. Instead, the court implicitly granted the motion by allowing both types of evidence to be offered during the trial.

Brewner now contends that, because he was not present when the trial court announced its ruling on the 404 (b) motion, he was denied his constitutional right to be present. As an initial matter, it could be argued that Brewner was in fact present when the trial court "announced" its decision, as he was present at all times during trial when the evidence in question was being introduced. But even if this were not so, Brewner's claim would fail for the simple reason that a trial court's announcement of a legal ruling on a motion is not a "critical stage" of the proceedings at which the right to be present attaches. Brewner has cited no authority, and we are aware of none, holding that a defendant is constitutionally entitled to be present at the time a

court issues a ruling. Were it otherwise, trial courts would be compelled to announce all rulings in open court in the defendant's presence, meaning that they would be forbidden from ever issuing rulings by written order. That is plainly not the case. Accordingly, there was no denial of any right to be present in connection with the admission of the 404 (b) evidence.

Regarding the juror dismissal, the record reflects that, during jury selection on the first day of trial, the trial court dismissed a prospective juror during the lunch break after receiving a note from the juror requesting excusal due to a family emergency. Immediately following the lunch break, the trial court noted in open court, where Brewner himself as well as the prosecutor and Brewner's counsel were present, that it had made a "command decision" to excuse the juror because of the emergency. The court asked both defense counsel and the prosecutor whether there was "anything we need to talk about with regard to [the juror]," and both responded in the negative. Brewner did not express any disagreement with his counsel's assent to the trial court's decision, either contemporaneously with the trial court's statement or at any other time during the trial proceedings.

It is true that Brewner had the right to be present during the trial court's exchange with the prospective juror. See *Sammons*, 279 Ga. at 387 (2); *Hanifa*, 269 Ga. at 807 (6); but see *Waldrip v. State*, 266 Ga. 874, 879 (2) (471 SE2d 857) (1996) (finding no error where communications were unrelated to the case and were not prejudicial to the defendant). Even so, "'the right to be present belongs to the defendant, and he is free to relinquish it if he so chooses.'" *Burney v. State*, 299 Ga. 813, 820 (3) (b) (792 SE2d 354) (2016). The mechanics of relinquishment are plain:

> The right to be present is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver.

Id.; accord *Pennie v. State*, 271 Ga. 419, 421 (2) (520 SE2d 448) (1999). Here, Brewner's counsel affirmed in open court while Brewner was present that he had no objection to the juror's dismissal, or to the trial court's manner of handling the situation. And Brewner never voiced any disagreement during the ensuing eight-day trial with either the trial court's decision or his counsel's conduct. Brewner thus waived any right to be present and cannot now assert error in this regard. See *Fuller v. State*, 277 Ga. 505, 506 (2) (591 SE2d 782) (2004) (defendant waived right to be present by failing to object

11

after being informed of trial court's communications with jury outside his presence); *Hanifa*, 269 Ga. at 807-808 (6) (defendant waived right to be present by failing to object after being informed of trial judge's meeting with the jury outside presence of defendant and counsel).

## III.

Brewner next contends that the trial court erred in admitting the other acts evidence relating to his prior drug dealings and the 2013 home invasion targeting Staples. As an initial matter, it is undisputed that Brewner did not assert any objection when this evidence was first introduced at trial.[2] Accordingly, as Brewner concedes, our review of the trial court's admission of this evidence is limited to a plain error review. See OCGA § 24-1-103 (d); *Jones v. State*, 299 Ga. 40, 42 (2) (785 SE2d 886) (2016). The bar for plain error is a high one:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected

---

[2] At one point, in the course of moving for a mistrial when Staples referred during his testimony to Brewner's having been in jail, defense counsel did interpose an objection to "this whole line of questioning about these drug transactions." This objection, however, came after Staples had already testified, without objection, that he had met Brewner in 2010, used drugs with him at that time, and then began purchasing drugs from Brewner to resell and to support his own habit.

the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (punctuation omitted; emphasis in original). Under the circumstances here, there was no error, much less any clear or obvious error, and therefore Brewner's other acts claims fail.

Under OCGA § 24-4-404 (b),

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Of course, even if offered for a proper purpose under OCGA § 24-4-404 (b), evidence may nonetheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403; *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015). Because these

provisions of our new Evidence Code were borrowed from the Federal Rules of Evidence, our interpretation of these provisions is guided by the decisions of the federal appellate courts, especially the United States Supreme Court and the Eleventh Circuit. *Davis v. State*, 299 Ga. 180, 185 (2) (a) (2) (787 SE2d 221) (2016). Thus, in construing OCGA § 24-4-404 (b) in conjunction with OCGA § 24-4-403, this Court has adopted the three-part test utilized in the Eleventh Circuit under the analogous Rules 403 and 404 (b) of the Federal Rules of Evidence. *Hood v. State*, 299 Ga. 95, 101 (4) (786 SE2d 648) (2016). This test assesses whether (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by the likelihood of its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant in fact committed the other act. Id.; *Olds v. State*, 299 Ga. 65, 69-70 (2) (786 SE2d 633) (2016). We review a trial court's ruling on the admission of 404 (b) evidence for abuse of discretion. *Jones*, 297 Ga. at 159 (1).

The evidence of Brewner's involvement in the Staples home invasion was relevant to prove his intent to participate in the scheme to invade Schrier's home in search of drugs and money. See *Olds*, 299 Ga. at 71-72 (2)

(a defendant's not guilty plea makes intent an issue for purposes of 404 (b)). More specifically, it was relevant to rebut Brewner's assertion that he merely introduced Staples to the other participants, with no intent to further orchestrate and actively assist in the enterprise. Because Brewner's defense was premised on his alleged disavowal of the robbery scheme, which Brewner sought to establish by highlighting Roberts' testimony regarding his intent to distance himself from the scheme, his prior involvement in a similar plot the year before the crimes here is highly probative of his intent to participate in the overall criminal scheme. Accordingly, the significant probative value of this evidence in undercutting the defense Brewner himself interposed was not substantially outweighed by the likelihood of undue prejudice from its admission. Finally, there is little dispute that Brewner did in fact mastermind the 2013 crime, as Staples' testimony on this subject was unchallenged, and Brewner himself admitted doing the acts in his interview with Detective Johnson.

As for the evidence regarding Brewner's involvement in the drug trade, this evidence was clearly relevant to establish context for his relationship with Staples and to the others involved in the crimes. Because this evidence was integral to the narrative surrounding the crimes, its probative value was

15

not substantially outweighed by the risk of undue prejudice. See generally

*Old Chief v. United States*, 519 U. S. 172, 183 (II) (B) (1) (117 SCt 644, 136

LE2d 574) (1997) (recognizing, in weighing the probative value versus

prejudice of evidence offered under Rule 404 (b), "the offering party's need

for evidentiary richness and narrative integrity in presenting a case").[3]

Again, this evidence was undisputed, so the jury was authorized to find by a

preponderance of the evidence that Brewner did engage in such drug dealing.

Accordingly, the trial court did not abuse its discretion in admitting the

evidence under 404 (b).

To the extent Brewner asserts error in the trial court's failure to make

on- the-record findings with regard to the three prongs of the 404 (b) test, he

is incorrect. Again, because Brewner failed to object at trial on this basis, we

review this issue only for plain error. While our case law pre-dating the

effective date of the new Evidence Code held that trial courts must make on-

---

[3] In fact, to the extent this evidence simply helps to present a complete picture of the various parties' relationships and the context within which the crimes were planned and perpetrated, this evidence might even be viewed as "intrinsic" evidence not subject to the 404 (b) requirements. See Paul S. Milich, Georgia Rules of Evidence § 11:3, at 243-251 (2016-17 ed.); *Brooks v. State*, 298 Ga. 722, 726 (2), n. 11 (783 SE2d 895) (2016) (evidence is "intrinsic" if it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to "complete the story of the crime"; or (3) "inextricably intertwined with the evidence regarding the charged offense").

the-record findings that the requirements for admissibility had been satisfied, see, e.g., *Moore v. State*, 290 Ga. 805, 809 (2) (725 SE2d 290) (2012), the Eleventh Circuit has imposed no such requirement under Rule 404 (b). See *United States v. Schatz*, 545 Fed. Appx. 934, 936 (11th Cir. 2013) (because there is no United States Supreme Court or Eleventh Circuit precedent specifically requiring on-the-record findings prior to the admission of evidence under Rule 404 (b), defendant could not establish plain error in district court's failure to do so); *United States v. Braithwaite*, 709 F2d 1450, 1455-1456 (11th Cir. 1983) (no error in district court's failure to make on-the-record finding under 404 (b)); see also *United States v. Veltmann*, 6 F3d 1483, 1499 (III) (B) (5) (11th Cir. 1993) (where record did not indicate the district court conducted the proper review under Rule 404 (b), the appeals court conducted the analysis itself). Accordingly, there was no plain error in the trial court's failure to make on-the-record findings in support of admission of the 404 (b) evidence. *Schatz*, 545 Fed. Appx. at 936 (II).

IV.

Brewner contends that his trial counsel rendered constitutionally ineffective assistance in two respects, but neither argument succeeds. To establish ineffective assistance of counsel, a defendant must show that his

17

counsel's performance was professionally deficient and that such deficient performance resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U. S. 668, 695 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688 (III) (A). To prove prejudice, one must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 695 (III) (B). If the defendant fails to establish either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other. *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012).

Brewner's first argument is that his counsel rendered ineffective assistance by failing to request a limiting instruction contemporaneous with the admission of the 404 (b) evidence. But the trial court gave a comprehensive limiting instruction at the conclusion of the evidence regarding the limited purposes for which the jury could consider the 404 (b)

18

evidence. The giving of the instruction at the conclusion of the evidence mitigated any risk that the jury would ultimately consider the evidence for an improper purpose. See *United States v. Lamons*, 532 F3d 1251, 1266-1267 (II) (B) (11th Cir. 2008) (no error where limiting instruction regarding 404 (b) evidence given at the close of evidence). See also *Smith v. State*, 270 Ga. 68, 70 (3) (508 SE2d 145) (1998) (counsel's failure to request a limiting instruction contemporaneously with the admission of prior bad act evidence did not constitute ineffective assistance where trial court gave limiting instruction at close of evidence). Brewner therefore cannot establish prejudice from trial counsel's failure to request the instruction at an earlier point in the trial.

Brewner also asserts ineffective assistance in counsel's failure to object to the admission of the audio recordings of Brewner's phone calls to Detective Johnson based on lack of voice authentication. Under OCGA § 24-9-901 (a), authentication of evidence may be achieved through any of a variety of means affording "evidence sufficient to support a finding that the matter in question is what its proponent claims." It is true, as Brewner notes, that the State did not present any evidence that Detective Johnson or any other person who was familiar with Brewner's voice recognized that voice on

the recordings. But the record does reflect, among other things, that in these conversations, the speaker provided verifiable information that only Brewner would possess, such as the location of his truck and contents of his backpack. Trial counsel, moreover, testified at the new trial hearing that he believed the voice on the recording was Brewner's, and thus any objection based on lack of authentication could have been overcome by readily available evidence. We agree with counsel's assessment, and thus Brewner can show neither deficient performance nor prejudice.

V.

In his final enumeration, Brewner contends that the trial court erred in admitting as prior inconsistent statements the video recordings of Roberts' interview with Detective Johnson. Under OCGA § 24-6-613 (b), extrinsic evidence of a witness' prior inconsistent statement may be admitted so long as "the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require." See also OCGA § 24-8-801 (d) (1) (A) (prior inconsistent statements meeting requirements of OCGA § 24-6-613 (b) are

not hearsay if the declarant testifies at trial and is subject to cross-examination).

The recordings were admitted, over objection by the defense, after Roberts testified at length regarding the relationships among Brewner, Staples, the other co-indictees, and various witnesses; her observations regarding the interactions among these individuals in the days leading up to the crimes and immediately thereafter; and her understanding about the plot to recover the missing drugs and/or money from Schrier's home. Roberts steadfastly maintained at trial that Brewner's involvement in the robbery plot was limited to merely introducing Staples to Jenkins and that she had convinced him to eschew further participation in the scheme. At various points during Roberts' direct testimony, she was asked about discrepancies between her testimony and her prior recorded statement to Detective Johnson. For example, Roberts claimed not to recall telling Detective Johnson that Brewner had initially wanted to be an active participant in the robbery, and she attempted to reconcile her trial testimony that Brewner had gotten rid of all his guns by the time of the crimes with her prior statement to Detective Johnson that Brewner always carried a gun. When given the opportunity to explain why her trial testimony might have differed from her

statements to police, Roberts testified that at the time of her police interview she was extremely tired and under the influence of drugs.

The failure of a witness to remember making a statement may provide the foundation for offering extrinsic evidence to prove that the statement was made. See *Hood*, 299 Ga. at 99 (2); *McNair v. State*, 330 Ga. App. 478, 480 (1) (767 SE2d 290) (2014) (evidence of witness's past statements to police, including recording of police statement, were properly admitted where witness claimed he could not recall speaking with police). Here, the foundation was laid for admission of Roberts' prior statements to Detective Johnson when Roberts gave testimony inconsistent with those statements, was confronted with them, and disclaimed them. There was no error in the trial court's admission and publication of the recorded statements at trial.

Judgment affirmed. All the Justices concur.

Decided August 14, 2017 – Reconsideration denied September 13, 2017.

Murder. Gwinnett Superior Court. Before Judge Hamil.

Frances C. Kuo, for appellant.

Daniel J. Porter, District Attorney, Christopher M. Quinn, Lee F. Tittsworth, Nigel R. Lush, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.