**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 5, 2022**

# In the Court of Appeals of Georgia

A22A0770. TAYLOR v. THE STATE.

PER CURIAM.

A jury found Willie D. Taylor guilty of voluntary manslaughter.[1] In his sole enumeration of error, Taylor contends that the trial court committed plain error in allowing a police officer to testify that the shooting of the victim was not in self-defense. According to Taylor, this testimony improperly invaded the province of the jury. Finding no error, we affirm.

---

[1] Taylor was charged with murder, and the jury found him guilty of the lesser included offense of voluntary manslaughter. The jury also found Taylor guilty of felony murder, but that conviction was vacated by operation of law. See *Edge v. State*, 261 Ga. 865, 865-867 (2) (414 SE2d 463) (1992) (defendant who is found guilty of voluntary manslaughter may not also be found guilty of felony murder based upon the same underlying assault). Because Taylor was not convicted of murder, jurisdiction is proper in this Court. See *Kittles v. State*, 200 Ga. 625, 625 (37 SE2d 704) (1946).

Viewed in a light favorable to the verdict,[2] the evidence shows that, in 1988, police received a call about a dead body. Upon arriving at the scene, police discovered the body of a man who had been killed by two close-range shots to the head. The victim was subsequently identified as Leonard Hill. Although police investigated the homicide, the case remained unsolved for years.

At the time of his death, Hill had a young son named Antonio. In 2004 or 2005, Antonio began to ask questions about his father's death. Taylor, who is Antonio's uncle, told Antonio that he shot Hill to prevent him from harming Antonio's mother, Joyce. According to Antonio, his uncle said he confronted Hill at the home Hill shared with Joyce, who is Taylor's sister. Taylor put a pillow over Hill's head and shot him. Taylor's friend, Ronnie Clemmons, helped Taylor load the body into the trunk of a car. After the two drove the body to the dump site, they discovered that Hill was still alive, and Taylor shot Hill a second time.

At first, Antonio did nothing with the information. Eventually, however, Antonio contacted the police and reported the crime. Police fitted Antonio with recording devices to surreptitiously record a conversation with his uncle about the homicide. Police also interviewed Clemmons, who admitted he helped Taylor load Hill's body into the car.

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

At trial, Clemmons testified that he went with Taylor to confront Hill. According to Clemmons, Taylor and Hill were arguing, but he saw no signs of violence, so he walked outside. As Clemmons went back inside to tell Taylor he was leaving, he heard a gunshot. Clemmons saw Taylor holding a gun and Hill's body, seated on the sofa, "slumped over to the left." At Taylor's request, Clemmons helped move the body into the trunk of a car.

Taylor testified on his own behalf and admitted to shooting Hill. He claimed he went to Hill's home at the request of Joyce, who had told him Hill had threatened to kill her. When Taylor arrived at the house, Hill asked him "What the fuck [are] you doing here?" According to Taylor, Hill had a gun, which he pointed at Taylor's face. Hill told Taylor to stay out of his business or he would kill him. When Hill was momentarily distracted by a knock at the door, Taylor pulled his own gun from his waistband and shot Hill.

Taylor presented additional witnesses to corroborate his version of events. Taylor's sister Joyce testified about the abuse she suffered at Hill's hand and her plea that Taylor accompany her home the night of the shooting. Joyce also said that Hill had molested her daughter. Joyce's son, Donald, also testified. Donald was 16 at the time of

the shooting, and he was present when Taylor came to see Hill. According to Donald, Hill pointed a gun at Taylor prior to getting shot.

Taylor was charged with multiple crimes including the murder of Hill. At trial, Taylor argued that he acted in self-defense. Although the jury acquitted Taylor of murder, it found him guilty of the lesser included offense of voluntary manslaughter.

Taylor moved for a new trial, which the trial court denied. Taylor now appeals, arguing that the trial court committed plain error in allowing a detective to testify as to opinion regarding the "ultimate issue" of whether Taylor acted in self-defense. Specifically, Taylor points to testimony elicited when the State asked the detective why the investigation continued after Taylor raised the claim of self-defense. The detective responded that the police had to ensure that the claim of self-defense was supported by the evidence. The detective was then asked about how the autopsy report factored into his decision to continue the investigation, and he replied:

> Well, we looked at the autopsy report and we saw that the gunshot wounds, they reflected a close-range shooting. Two bullets had entered into the head of the victim. Noted in the autopsy report was scorching and soot, which would show and indicate that the actual person who shot the gun was very close to the victim they did it. That soot comes from the cylinder of the firearm when you fire it. . . . I, personally, . . . working homicides, going to hundreds of scenes, working them over the years, I just – I've never seen that kind of injury in a self-defense situation[.]

4

According to Taylor, this testimony "usurped the jury's task of deciding whether [he] deserved a full acquittal because he used deadly force believing that he was in imminent danger of being killed." Taylor thus argues he should be given a new trial.

Because Taylor did not object to the detective's testimony at trial, the admission of the allegedly objectionable testimony is reviewed under a "plain error" standard. See *Brewner v. State*, 302 Ga. 6, 12 (III) (804 SE2d 94) (2017).

> The bar for plain error is a high one: First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Id. at 12-13 (citation, punctuation, and emphasis omitted).

Here, we discern no error, much less plain error. The admission of opinion evidence is governed by OCGA § 24-7-704, which provides that, as a general matter,

5

"testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact." OCGA § 24-7-704 (a). Although OCGA § 24-7-704 (b) prohibits an expert witness from testifying regarding certain ultimate issues, the detective in this case testified as a lay witness rather than an expert. Taylor suggests that the testimony should be treated as that of an expert because the detective "leveraged his status as an experienced detective" to offer an opinion jurors "may have believed unassailable because of [its] esteemed source." But "lay witnesses may draw on their professional experiences to guide their opinions without necessarily being treated as expert witnesses." *Bullard v. State*, 307 Ga. 482, 492 (4) (837 SE2d 348) (2019) (citation and punctuation omitted). Under these circumstances, the detective's testimony was unobjectionable. See *Mack v. State*, 306 Ga. 607, 609-610 (832 SE2d 415) (2) (2019).

Furthermore, we find it unlikely that Taylor was harmed by the detective's testimony. The detective's continued investigation of Taylor demonstrated that he did not believe Taylor's self-defense claim, and "comments upon the patently obvious generally pose little, if any, danger of prejudice." *Thompson v. State*, 304 Ga. 146, 153 (9) (816 SE2d 646) (2018) (citation and punctuation omitted).

*Judgment affirmed. Division Per Curiam. All Judges concur*.

6