**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 8, 2026**

# In the Court of Appeals of Georgia

A26A0376. SHARMA v. THE STATE.

DILLARD, Presiding Judge.

After trial, a jury convicted Sagar Sharma on one count of child molestation and one count of sexual battery on a child under the age of 16 years. On appeal, Sharma challenges his convictions and the denial of his motion for new trial. More precisely, he contends the trial court erred in denying his right to be present at a critical stage of the proceedings—a hearing on whether to admit evidence of his prior acts, during which it ruled his counsel had express permission to waive his presence. For the following reasons, we affirm Sharma's convictions and the denial of his motion for new trial.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that sometime in late 2015 or early 2016, N. C. and her parents—all of whom are immigrants from India—moved to New York City and then to Alabama, where they met Sharma. Knowing the family was looking for a place to live (as well as seeking employment), Sharma offered both of N. C.'s parents jobs at a convenience store he owned in Crawfordville, Georgia. Sharma also told N. C.'s family they could live in a nearby home he owned. N. C.'s family accepted Sharma's offer and moved to Crawfordville. Initially, N. C.'s family stayed in the same home with Sharma and his family, but the Sharma family later moved to Macon.

Despite residing in Macon, Sharma returned to Crawfordville once a week and worked in the store's office. In March 2016, when N. C. was 14 years old, Sharma helped her with her studies (particularly English). As a result, Sharma spent a lot of time with the child. Eventually, Sharma started sending N. C. sexually suggestive text messages. Later on, during their tutoring sessions, Sharma began rubbing N. C.'s legs and hugging her. On one occasion, Sharma tried to get N. C. to remove her clothes as

---

[1] See, e.g., *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018) (noting when a conviction is appealed, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence).

he hugged her. And on all of those occasions, Sharma warned N. C. not to tell anyone about his actions, threatening that "things would not be good for her and her family" if she did so.

Over the course of the next month, N. C. became emotionally withdrawn and often cried in class such that her teachers noticed and asked her what was wrong. N. C. told one of her teachers that she wanted to die and did not want to be touched by anyone; but she did not disclose why she felt this way. N. C.'s parents were promptly notified about her comments, but she did not disclose Sharma's conduct to them. In fact, Sharma drove N. C.'s father to the school that day to pick up his daughter; and later, after picking up N. C. and then dropping her father off at the store to return to work, he again warned her not to tell anyone about his actions.

A few weeks later, in early April 2016, Sharma and N. C. were alone in her family's home when he took off his shirt, removed N. C.'s shirt, and began touching her breasts and hugging her. While this was happening, N. C.'s mother arrived home and was surprised to find the door locked. As she knocked on the door and attempted to unlock it, she saw Sharma buttoning up his shirt and leaving the room where her daughter was located. Immediately, N. C.'s mother confronted Sharma. N. C. and her

family then returned to Alabama, where they eventually informed law enforcement that Sharma had sexually abused N. C.

On August 28, 2017, the State charged Sharma, via indictment, with one count of child molestation and one count of sexual battery against a child under the age of 16 years. And a few months later, the State filed a notice of intent to present evidence of Sharma's other acts under OCGA § 24-4-404(b), § 24-4-413, and § 24-4-414. Sharma filed an objection, and the trial court scheduled a hearing on the matter.

The hearing was held on May 25, 2018. Shortly after the hearing began, the State's prosecutor stated that the purpose of the hearing was to determine whether evidence of Sharma's prior acts was admissible. A colloquy then took place between the trial court and Sharma's counsel, Cheryl Gracey:

The Court: Are you ready, Ms. Gracey?

Ms. Gracey: I am, Your Honor. And my client is not present. I advised him of this hearing and told him that he has the right to be here, and he declined to be here today.

The Court: He's waived his appearance?

Ms. Gracey: Yes, sir.

The Court: I would ask you to put that in writing, have him sign it, and file it as part of the record; all right?

Ms. Gracey: I will.

The hearing proceeded, and the State argued for the admission of an incident in which Sharma inappropriately touched a former employee when she was 20 years old. At the conclusion of the hearing, the trial court ruled the evidence was admissible, and it issued an order to that effect, which noted that Sharma waived his right to be present.

On May 29, 2018, the case was called for trial, but Sharma did not appear. The trial court issued a bench warrant for Sharma's arrest; but after four months, he remained a fugitive, leading his then-counsel (Gracey) to withdraw. Sharma remained a fugitive for the next five years, until July 2023, when friends of N. C.'s family saw him at a wedding in Alabama and immediately alerted law enforcement.

Finally, on January 3, 2024, Sharma's trial began, during which N. C., her mother, N. C.'s school teacher, law enforcement, and a forensic interviewer with a child-advocacy center testified. A former convenience-store employee also testified that Sharma touched her in a sexually inappropriate manner. At the trial's conclusion,

the jury found Sharma guilty on the charges of child molestation and sexual battery against a child under the age of 16 years.

Sharma filed a motion for new trial. In doing so, he argued, among other things, that he was denied the right to be present at the hearing to determine the admissibility of the prior-acts evidence—claiming he had not authorized his counsel to waive his presence. The trial court then conducted a hearing on Sharma's motion, in which his former counsel, Gracey, testified in detail about her recollection of the prior-acts-evidence hearing. After the hearing, the trial court denied Sharma's motion. This appeal follows.

In his sole enumeration of error, Sharma contends the trial court erred in denying his right to be present at the hearing on whether to admit evidence of his prior acts, arguing his former counsel lacked express permission to waive his right to be present. We disagree.

The Supreme Court of Georgia has long held that the Georgia Constitution "guarantees criminal defendants the right to be present, and see and hear, all the proceedings which are had against him on his trial before the court."[2] Indeed, the right

---

[2] *Champ v. State*, 310 Ga. 832, 839(2)(b) (854 SE2d 706) (2021) (punctuation omitted). See *Hurston v. State*, 310 Ga. 818, 823(2)(b) (854 SE2d 745) (2021) (noting

6

to be present is "a fundamental right and a foundational aspect of due process of law."[3] Importantly, the right to be present "attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure."[4] And our Supreme Court has defined a "critical stage" of a criminal proceeding as "one in which the defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way."[5] Importantly, violations of this due-

---

that our Supreme Court "has long recognized that a criminal defendant has a state constitutional right to be present during all critical stages of the proceedings against him" (quotation marks omitted)). See also Ga. Const. Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

[3] *Hampton v. State*, 282 Ga. 490, 491–92(2)(a) (651 SE2d 698) (2007). See *Tennessee v. Lane*, 541 U.S. 509, 523(IV) (124 SCt 1978, 158 LE2d 820) (2004) ("The Due Process Clause [of the Fourteenth Amendment] and the Confrontation Clause of the Sixth Amendment ... both guarantee to a criminal defendant ... the right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." (punctuation omitted)).

[4] *Huff v. State*, 274 Ga. 110, 111(2) (612 SE2d 785) (2001) (punctuation omitted). Accord *Ramirez v. State*, 345 Ga. App. 611, 615(2) (814 SE2d 751) (2018).

[5] *Hardy v. State*, 306 Ga. 654, 660(2)(b) (832 SE2d 770) (2019) (quotation marks omitted). Accord *Brewner v. State*, 302 Ga. 6, 10(II) (804 SE2d 94) (2017).

process right are "presumed prejudicial, and, absent a waiver by the defendant, require a new trial."[6]

Here, Sharma argues the trial court denied his right to be present at the pre-trial hearing to determine the admissibility of the prior-acts evidence, when it found he provided his former counsel with express permission to waive his right to be present. But Sharma's contention begs the question of whether this was the type of proceeding to which he even had a right to be present. As discussed above, this pre-trial hearing did not involve witness testimony, but only legal arguments about the admissibility of prior-acts evidence to which he would have made no meaningful contribution. As a result, the discussion of the State's motion to admit such evidence in Sharma's absence did not violate his constitutional right to be present.[7] And we will affirm the

---

[6] *Brewner*, 302 Ga. at 9(II). Accord *Sammons v. State*, 279 Ga. 386, 387(2) (612 SE2d 785) (2005).

[7] See *Hardy*, 306 Ga. at 659–60(2)(b)–(c) (holding that discussion of codefendant's pretrial motions in defendant's absence did not violate his constitutional right to be present during all critical stages of the proceedings against him given that such motions involved only legal arguments to which defendant would have made no meaningful contribution); *Brewner*, 302 Ga. at 10(II) (explaining that pre-trial hearings and bench conferences concerning purely legal issues, such as the admissibility of evidence, ordinarily do not implicate the right to be present); *Campbell v. State*, 292 Ga. 766, 770(4) (740 SE2d 115) (2013) (concluding that pre-trial discussion of legal motions regarding excluding cross-examination of witnesses on

8

trial court's denial of a motion for new trial under the "right for any reason" rule if "the ultimate judgment was correct."[8]

But even if we agreed that Sharma had a right to be present at the hearing on the admissibility of prior-acts evidence, this right was violated. Indeed, the right to be present at a critical stage of a criminal proceeding "belongs to the defendant, who is free to relinquish that right if he or she so chooses."[9] And a defendant may relinquish his right to be present if "he personally waives it in court; if his counsel waives it at his express direction; if his counsel waives it in open court while he is present; or if his counsel waives it and he subsequently acquiesces to the waiver."[10]

_____

certain topics was not a critical stage of trial requiring defendant's presence to ensure a fair hearing, and thus, defendant's absence did not violate his constitutional right to be present during trial). But see *McClarity v. State*, 234 Ga. App. 348, 354–55(4) (506 SE2d 392) (1998) (holding that, before enactment of the "new" evidence code, that a defendant had the right to be present at a hearing under former Uniform Superior Court Rule 31.3(B) to determine admissibility of similar-transaction evidence, but noting that "nothing indicate[d] a waiver" on defendant's part).

[8] *Gilmore v. State*, 369 Ga. App. 305, 311(5) (893 SE2d 449) (2023) (quotation marks omitted).

[9] *Ramirez*, 345 Ga. App. at 616(2) (punctuation omitted). See *Brewner*, 302 Ga. at 11(II) (explaining that "the right to be present belongs to the defendant, and he is free to relinquish it if he so chooses" (quotation marks omitted)).

[10] *Hurston*, 310 Ga. at 823(2)(b). Accord *Ramirez*, 345 Ga. App. at 616(2).

Here, the record shows that Sharma's counsel, Gracey, waived his right to be present at the pre-trial hearing at his express direction. As noted above, at the start of the hearing, Gracey informed the trial court that Sharma was aware of the hearing and his right to be present but decided to waive that right and not attend. The trial court then directed Gracey to draft a document acknowledging that waiver and to have Sharma sign it; and she responded that she would do so.

At the hearing on Sharma's motion for new trial, Gracey testified that although she had no *specific* recollection—from seven years ago—of communicating with Sharma about waiving his right to be present at the hearing, based on the transcript from that hearing, she believed she must have discussed the matter with him. And when pressed on this point by Sharma's appellate counsel, Gracey responded: "[B]ased on the transcript and what I typically do in cases, I feel confident that I had a conversation with him." When further pressed, Gracey adamantly replied: "I don't remember having a conversation, but I know it had to have happened because I wouldn't have told the Judge that he waived his appearance if he didn't." She added that, unlike her actions at the prior-acts-evidence hearing, normally if she expects a client to appear and they do not, she calls her office and directs staff to contact the

client immediately; but the records of Gracey's communications with her staff from that day did not show Sharma's absence was unexpected. Later in the hearing, Gracey stated that she had, in fact, drafted a waiver of appearance, as the trial court directed; and the State's prosecutor then introduced that unsigned document into evidence.

Contrary to Sharma's contention, this record shows that he gave Gracey permission to waive his presence at the prior-acts-evidence hearing. Indeed, even though Gracey did not recall "reaching the agreement with [Sharma], [her] testimony concerning [her] standard practice and procedure authorized the trial court to conclude that such an agreement had been reached."[11] The trial court did not err, then, in crediting Gracey's testimony and concluding that she waived Sharma's right to be present at the prior-acts-evidence hearing at his express direction.[12]

---

[11] *Ramirez*, 345 Ga. App. at 617(2). See *Jackson v. Hopper*, 243 Ga. 41, 41–42 (252 SE2d 467) (1979) (holding that defense counsel's testimony of his general policy in advising defendants was sufficient to support finding that the defendant in that case had been similarly advised, even though counsel had "no independent recollection" of his conversation with the defendant (punctuation omitted)); *Williams v. State*, 334 Ga. App. 311, 312–13 (779 SE2d 91) (2015) (finding that defense counsel's testimony regarding his general practice when interacting with clients was sufficient to show how counsel interacted with the specific defendant in that case).

[12] See *Ramirez*, 345 Ga. App. at 617–18(2) (holding that defendant expressly waived his right to be present at critical stage of proceeding based on former defense counsel's testimony that although he did not remember defendant agreeing he did not

The record also shows that Sharma acquiesced to the waiver. As the Supreme Court of Georgia has explained, "[a]cquiescence may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence."[13] And the question is whether the defendant had "sufficient information concerning the proceeding occurring in his absence to fairly construe his silence in this regard as acquiescence."[14]

Here, regardless of whether Sharma knew the outcome of the prior-acts-evidence hearing in 2018, given his flight—before his trial in 2024—he knew the State intended to call his former employee as a witness. Sharma was also present during his trial when the State called this witness, when the trial court provided the jury with a preliminary instruction as to the limited purpose of the witness, and when the witness actually testified. Yet, at no point did he object to this testimony based on the

---

need to attend bench conferences, counsel would not have misrepresented this fact to the court if it had not occurred). See also *Hampton*, 282 Ga. at 492(2)(a) (concluding that defendant waived right to be present during interviews with individual jurors when defendant expressly directed his counsel to waive his right to be present).

[13] *Hurston*, 310 Ga. at 823(2)(b) (quotation marks omitted). Accord *Burney v. State*, 299 Ga. 813, 820(3)(b) (792 SE2d 354) (2016).

[14] *Hurston*, 310 Ga. at 824(2)(b) (punctuation omitted).

argument that its admissibility had been determined in his absence. Rather, the first time he claimed that his right to be present at the prior-acts-evidence hearing had been violated was in his amended motion for new trial, which was filed nearly a year and a half after the jury rendered its verdict. Given these circumstances, Sharma acquiesced to his absence from the 2018 prior-acts-evidence hearing.[15]

For these reasons, we affirm Sharma's convictions and the denial of his motion for new trial.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*

---

[15] See id. at 824–25(2)(b) (holding that defendant acquiesced to his counsel's waiver of his right to be present during the court's meeting with witness, who expressed fear to testify in court, given that defendant was present when witness failed to enter the courtroom, when the court announced it would meet witness in a conference room, and when witness testified in court, and thus, defendant's right to be present during trial was not violated); *Scudder v. State*, 298 Ga. 438, 439–40 (782 SE2d 638) (2016) (explaining that defendant acquiesced to his absence when the trial court spoke with a witness in chambers about her refusal to testify, because the defendant knew that he had been excluded from the meeting and the nature of the discussion but did not object or ask for the transcript of the meeting to be provided to him); *Adams v. State*, 316 Ga. App. 1, 6(2) (728 SE2d 260) (2012) (concluding that defendant acquiesced to trial court's ex parte decision to excuse a juror given that trial court explained its decision and neither defendant nor his counsel objected).