FINAL COPY
309 Ga. 645

S20A1005.  REEVES v. THE STATE.

MCMILLIAN, Justice.

Appellant Kevin Reeves challenges his convictions for the malice murder of Marquis Stephens and numerous other crimes, all committed in connection with a gunfight at a house party.[1]

---

[1] Stephens was killed on October 7, 2015. On January 29, 2016, a Fulton County grand jury indicted Reeves and Rodney Gibbs jointly for malice murder (Count 1); felony murder predicated on first-degree burglary (Count 2); felony murder predicated on criminal attempt to commit armed robbery (Count 3); felony murder predicated on aggravated assault with a deadly weapon (Count 4); felony murder predicated on first-degree criminal damage to property (Count 5); first-degree burglary (Count 9); seven counts of criminal attempt to commit armed robbery (Counts 10-16); seven counts of aggravated assault with a deadly weapon (Counts 17-23); first-degree criminal damage to property (Count 24); aggravated cruelty to animals (Count 25); and possession of a firearm during the commission of a felony (Count 26). Gibbs was separately indicted for two counts of felony murder predicated on possession of a firearm by a convicted felon (Counts 7 and 8) and two counts of possession of a firearm by a convicted felon (Counts 29 and 30). Reeves was separately indicted for felony murder predicated on possession of a firearm by a first-offender probationer (Count 6) and two counts of possession of a firearm by a first-offender probationer (Counts 27 and 28). Gibbs and Reeves's trials were severed, and Gibbs separately appealed his convictions, which we affirmed. See *Gibbs v. State*, 309 Ga. ___ (___ SE2d ___) (2020).

Reeves was tried from February 8 to 13, 2018, and the jury found him guilty of all counts. The trial court sentenced Reeves to serve life in prison for Count 1, twenty years concurrent for Count 9, twenty years concurrent for each of Counts 10-16, twenty years concurrent for each of Counts 18-23, ten years

Following the trial court's denial of his motion for new trial, Reeves appeals, arguing that the trial court violated his Georgia constitutional right to be present by excluding him from several bench conferences and, relatedly, that trial counsel was constitutionally ineffective by failing to object to Reeves's exclusion from the bench conferences. Although we conclude that the trial court erred in failing to merge six of the counts of aggravated assault of which Reeves was convicted with six of the counts of attempted armed robbery, we otherwise affirm Reeves's convictions.

1. On the evening of October 7, 2015, a group of friends had gathered at the home of James and Katherine McLester for a fish fry and to watch television. While waiting for a television show to air, James, Quartez Lindley, Jerome Moss, and Kevin Butler were in the dining room playing dominoes, while Katherine and Randy

concurrent for Count 24, five years concurrent for Count 25, five years consecutive for Count 26, and five years concurrent for Count 27. The trial court entered an order of nolle prosequi on Count 28, and all other counts were either vacated by operation of law or merged for sentencing purposes. We have identified several sentencing errors that we correct in Division 4. Reeves timely filed a notice of appeal, and this case was docketed to the April 2020 term of this Court and thereafter submitted for a decision on the briefs.

Snipes were in the kitchen. Around 9:30 p.m., Reeves's co-indictee Rodney Gibbs came to the house and had a brief discussion with James in the dining room where the men were playing dominoes. Gibbs then walked outside and came back inside the house with Reeves, who waited by the front door.

Gibbs returned to the dining room and said to James and the other men playing dominoes, "Motherf***ers, y'all know what it is."[2] Gibbs then withdrew a handgun, pointed it at each person sitting at the domino table, and began firing. Reeves, who had withdrawn his own handgun at the same time that Gibbs did, likewise pointed his weapon at the group of men and began shooting. The men sitting at the domino table dove for cover, and Katherine and Snipes hid behind the refrigerator in the kitchen. After the shooting began, Stephens, who had been standing in the kitchen, withdrew his own weapon and began firing. During the gunfire exchange, Stephens was struck in the abdomen. Gibbs and Reeves continued firing their

---

[2] Multiple witnesses testified that they understood Gibbs's statement to mean they were about to be robbed by Gibbs and Reeves.

weapons as they backed out of the house and across the yard. James's dog chased the men out of the house and into the front yard, where she was shot and killed. Reeves and Gibbs fired their weapons a total of 15 to 18 times, leaving numerous bullet holes on both the interior and exterior areas of the home. After Reeves and Gibbs fled the property, the McLesters and their guests loaded Stephens into the bed of a guest's truck and transported him to a hospital, where he later died as a result of the gunshot wound.

At trial, Lindley testified that he recognized Reeves from photographs he had previously seen on Instagram and that, on the night of the shooting, he accessed the photographs on Instagram and provided them to detectives. Detectives sent the photographs of Reeves to the Department of Motor Vehicles, which used facial recognition software to create a pool of potential suspects; the software indicated that Reeves's driver's license photo was the "best match." After determining that Reeves was the individual depicted in the Instagram photos, detectives created a six-person photographic array, which was shown to the surviving victims. From

the photographic array, Lindley, Butler, and Moss identified Reeves as one of the shooters.

Investigators also discovered that two days after the shooting, a Fulton County Jail inmate placed a call to Reeves. During the call, which was recorded, Reeves indicated that he was laying low and "coolin" because "sh*t happened," that a shooting had occurred during which someone died, that he needed to get rid of his gun, and that he was preparing to move. Cell phone records also showed that Reeves's cell phone was in the vicinity of both the crime scene and his mother's residence at the time of the shooting and that his cell phone moved eastward, away from the crime scene and his mother's residence, after the shooting.[3] At the time of the shooting, Reeves was serving probation as a felony first offender.

Although Reeves has not challenged the sufficiency of the evidence supporting his convictions, consistent with our customary practice in murder cases, we have reviewed the record and conclude

---

[3] At the time of the shooting, Reeves lived at his mother's residence, which was located 1.6 miles away from the McLesters' residence.

that the evidence as summarized above was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Reeves was guilty of the crimes of which he was convicted.[4] See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Reeves asserts that his right to be present was violated when the trial court conducted certain bench conferences outside of his presence. Specifically, Reeves points to five instances in the record where it appears that the trial court conferred with the State and Reeves's trial counsel without Reeves being present. However, Reeves has not shown that the bench conferences at issue constituted critical stages of the proceedings at which he had a right to be present.

When counsel participates in a bench conference involving purely legal issues, the right to be present is not implicated. See

---

[4] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, ___ Ga. ___ (4) (___ SE2d ___) (2020). The Court began assigning cases to the December term on August 3, 2020.

*Brewner v. State*, 302 Ga. 6, 10 (II) (804 SE2d 94) (2017) ("[P]re-trial hearings and bench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury instructions, ordinarily do not implicate the right to be present."). Moreover, mere "[s]peculation as to what may have been discussed at the conference cannot serve as the basis for the grant of a new trial." *Daughtie v. State*, 297 Ga. 261, 267 (5) (773 SE2d 263) (2015). Here, Reeves offers nothing more than speculation as to what the conferences might have concerned. Reeves's trial counsel did not testify at the motion for new trial hearing, and nothing in the record indicates the subject matter of those conferences.[5] Accordingly, this claim fails.

3. In a related enumeration of error, Reeves argues that his trial counsel rendered constitutionally ineffective assistance by failing to ensure that he was present during all parts of the trial.

> When an alleged violation of the Georgia constitutional
> right to be present is raised not directly but rather as a

---

[5] After the motion for new trial hearing, the State filed an affidavit from trial counsel in which counsel stated that he could not recall the content of any bench conference that took place during the trial and that he did not recall Reeves "requesting to participate in any bench conferences or asking about the content of any bench conference."

claim of ineffective assistance of counsel, the defendant must show both that his lawyer acted deficiently in not asserting his right and that this deficiency caused actual prejudice to the outcome of his trial.

*Hardy v. State*, 306 Ga. 654, 661 (3) (832 SE2d 770) (2019). As explained in Division 2, Reeves has failed to show that he had a right to be present at the bench conferences in question, so it follows that Reeves cannot show that his trial counsel performed deficiently by failing to assert that right. Moreover, Reeves does not argue, much less show, that his absence from the bench conferences caused him any prejudice. Thus, this claim is without merit. See id. at 661-62 (3) (where defendant failed to show that he had a right to be present at the motions hearing or that his counsel's waiver of his presence caused him any prejudice, his ineffective assistance claim was meritless).

4. Reeves does not raise the issue on appeal, but we have identified merger errors in his sentencing. See *Dixon v. State*, 302 Ga. 691, 696-97 (4) (808 SE2d 696) (2017) ("We have the discretion to correct merger errors sua sponte . . . because a merger error

results in an illegal and void judgment of conviction and sentence."). The six counts of aggravated assault with a deadly weapon involving James and Katherine McLester, Moss, Snipes, Butler, and Lindley (Counts 18-23) should have been merged into the attempted armed robbery convictions (Counts 11-16) involving those same victims. See *Thomas v. State*, 298 Ga. 106, 112 (3) (779 SE2d 616) (2015). We therefore vacate Reeves's convictions and sentences on those six counts of aggravated assault.

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED AUGUST 24, 2020.

Murder. Fulton Superior Court. Before Judge Russell.

*Angela Z. Brown, Genevieve Holmes*, for appellant.

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Mathew E. Plott, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.