**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 8, 2021**

# In the Court of Appeals of Georgia

A21A0334. ROBERTSON v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Eric Robertson and Laronda Moore[1] on charges of trafficking of persons for sexual servitude and cruelty to children in the second degree. On appeal, Robertson challenges the sufficiency of the evidence supporting his convictions and further contends that the trial court erred in denying (1) his right to be present at critical stages of his trial by excluding him from several bench conferences, and (2) his motion for a mistrial when a witness for the State allegedly improperly bolstered the victim's credibility. For the reasons noted *infra*, we affirm.

---

[1] In a separate appeal, this Court affirmed Moore's convictions. *See Moore v. State*, 354 Ga. App. 145 (840 SE2d 519) (2020).

Viewed in the light most favorable to the jury's verdict,[2] the record shows that in the late summer of 2017, seventeen-year-old B. E. ran away from the home and ended up living on the streets of Gainesville, Georgia. At some point that autumn, B. E. met Robertson and Moore through Moore's teenage son. And in late October, Robertson and Moore took B. E. to the home they shared with Moore's son and her teenage daughter. But once there, Robertson and Moore immediately explained to B. E. that to live with them, she needed to earn money and that she would do so by engaging in sexual acts with men whom Robertson and Moore would solicit. When B. E. objected, Moore told her she could get a job when she was 18 years old.

Initially, Moore and Robertson took B. E. to different locations to perform sex acts for money, including a local tire shop where she had sex with several of the employees. A few weeks later, Moore began using a dating application on a mobile phone to solicit men to come to her and Robertson's house to engage in sexual acts with B. E. Specifically, Moore contacted men via the app and set prices for various acts. Men—or "plays" (as Moore called them)—would come to the house, pay B. E. to have sex, and B. E. would place the money under Moore's bedroom door or in the bathroom, as Moore instructed. Moore also told B. E. how to act and what to say to

[2] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

the men to entice them. Further, both Moore and Robertson instructed B. E. how to perform with the men, with Robertson explicitly telling her that she had to "make them want it."

Over the course of the next three months, B. E. engaged in sexual acts with anywhere from two to eight men each day. And as a means of control, Moore and Robertson plied B. E. with synthetic marijuana almost daily and repeatedly told her that she would have to leave their home if she refused to do as they instructed. Moore and Robertson also violently berated B. E. and beat her if she failed to get money from the men who came to the house. In fact, on one occasion, Robertson struck B. E. hard enough that her eye became swollen and her nose bled, and in another incident, he pushed her into a wall. Robertson also forced B. E. to perform oral sex upon him on several occasions, explaining that she "needed to respect him more."

On January 6, 2018, after again being subjected to threats of violence and verbal abuse from Moore and Robertson, B. E. told them that she was going out to the back yard to clean up some trash. But once outside, she decided to run, escaping through the woods and eventually ending up at a nearby shopping center. Once there, she asked someone at a fast-food restaurant to borrow a phone so that she could call her mother. And shortly thereafter, B. E.'s mother came to pick her up, at which point

3

B. E. informed her what Moore and Robertson had been forcing her to do for the last several months. B. E.'s mother immediately contacted the Hall County Sheriff's Office and an investigation ensued. During that investigation, deputies executed a search warrant on Moore and Robertson's home and recovered synthetic marijuana and a mobile phone with the previously mentioned dating application.

The State charged Moore and Robertson, via the same indictment, with one count each of trafficking of persons for sexual servitude, cruelty to children in the second degree, and family violence battery. Subsequently, they were jointly tried, during which the State presented the foregoing evidence. The State also presented the testimony of a licensed social worker with a non-profit agency, specializing in counseling victims of commercial sexual exploitation, who discussed her counseling of B. E. Additionally, the State introduced numerous messages between Moore and various men that were recovered from the mobile phone dating application, in which Moore explicitly offered B. E.'s sexual services for money. At the conclusion of the trial, the jury found Moore and Robertson guilty on the charges of trafficking of persons for sexual servitude and second degree cruelty to children and not guilty on the charge of family violence battery.

After his convictions, Robertson obtained new counsel and filed a motion for new trial. The trial court held a hearing on his motion, during which Robertson's trial counsel testified regarding his representation. The trial court took the matter under advisement, but ultimately denied Robertson's motion for new trial. This appeal follows.

1. Robertson contends that the evidence was insufficient to support his convictions. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] And in evaluating the sufficiency of the evidence, we "do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] The jury's verdict will be upheld, then, so long as there is "some

---

[3] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[4] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[5] Bearing these guiding principles in mind, we turn to Robertson's specific challenge to the sufficiency of the evidence supporting his convictions.

OCGA § 16-5-46 (c) (1) (2017) provides: "A person commits the offense of trafficking an individual for sexual servitude when that person knowingly. . . [s]ubjects an individual to or maintains an individual in sexual servitude[.]" OCGA § 16-5-46 (a) (8) (2017), in relevant part, provides:

> "Sexual servitude" means any sexually explicit conduct or performance involving sexually explicit conduct for which anything of value is directly or indirectly given, promised to, or received by any individual, which conduct is induced or obtained: (A) [b]y coercion or deception; [or] (B) [f]rom an individual who is under the age of 18 years[.]

And under OCGA § 16-5-70 (c), "[a]ny person commits the offense of cruelty to children in the second degree when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain." Furthermore,

---

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted); *accord Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

"[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[6]

In this matter, Count 1 of the indictment charged Robertson with violating OCGA § 16-5-46 (c), alleging that on January 1, 2018, and no later than January 9, 2018, he "did knowingly subject and maintain [B. E.], an individual under 18 years of age during all of the events alleged, in sexual servitude by coercion and deception." Count 2 charged him with violating OCGA § 16-5-70 (c), alleging that on January 1, 2018, and no later than January 9, 2018, he "did, with criminal negligence, cause [B. E.], a child under the age of eighteen years during all of the events alleged, cruel and excessive physical and mental pain by requiring her to have sex for money, threatening to batter her, and battering her . . . ." And here, the evidence shows that Robertson assisted Moore in forcing B. E. to perform sexual acts for money, telling her that she had to make the men they solicited "want it," and taking her to places—such as the tire shop—so she could engage in sexual acts with its employees. Additionally, Robertson threatened B. E. with violence if she did not comply, told her he had "saved her," and actually beat her on several occasions, including striking her in the face hard enough to the extent her nose bled and her eye

---

[6] OCGA § 16-2-20 (a).

became swollen. Given these circumstances, the evidence sufficiently supported Robertson's convictions on the charges of trafficking of persons for sexual servitude[7] and cruelty to children in the second degree.[8]

2. Robertson also contends that the trial court erred in denying his right to be present at critical stages of his trial by excluding him from several bench conferences. Again, we disagree.

---

[7] *See Prescott v. State*, 357 Ga. App. 375, 382-83 (2) (d) (850 SE2d 812) (2020) (holding that evidence defendant instructed victim on how to prostitute herself (including delivering money from customers to him), that he threatened to kill her and her family if she ever signaled a customer for assistance, and that defendant advertised the victim for sexual services for which he received money was sufficient to support defendant's conviction for trafficking of persons for sexual servitude); *Lemery v. State*, 330 Ga. App. 623, 626-28 (1) (768 SE2d 800) (2015) (evidence that defendant kept victim in a state of financial dependence, used threat of homelessness to control him, and provided victim with drugs and alcohol was sufficient to support defendant's conviction for trafficking of persons for sexual servitude).

[8] *See Gomez v. State*, 301 Ga. 445, 453-54 (3) (801 SE2d 847) (2017) (finding that evidence was sufficient to support defendant's conviction for second degree cruelty to children based on rib injury suffered by daughter); *Morast v. State*, 323 Ga. App. 808, 812 (748 SE2d 287) (2013) (holding that multiple bone fractures were being inflicted upon the young child over the course of about 13 months and defendant at the very least knew about them supported conviction for second degree cruelty to children); *Parks v. State*, 304 Ga. App. 175, 177-78 (2) (a) (695 SE2d 704) (2010) (affirming conviction for cruelty to children in the second degree given evidence that defendant chased child with a metal pipe, threatened to kill child, and assaulted child with the metal pipe).

It is well settled that "[e]mbodied within the constitutional right to the courts is a criminal defendant's right to be present and see and hear all the proceedings which are had against him on the trial before the Court."[9] Indeed, the right to be present is "a fundamental right and a foundational aspect of due process of law."[10] And this right "attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure."[11] Specifically, our appellate courts have "determined that a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is

---

[9] *Ward v. State*, 288 Ga. 641, 645 (4) (706 SE2d 430) (2011) (citation and punctuation omitted); *accord Brewner v. State*, 302 Ga. 6, 9 (II) (804 SE2d 94) (2017); *see* Ga. Const. Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

[10] *Hampton v. State*, 282 Ga. 490, 491-92 (2) (a) (651 SE2d 698) (2007); *see also Tennessee v. Lane*, 541 U.S. 509, 523 (IV) (124 SCt 1978, 158 LE2d 820) (2004) ("The Due Process Clause [of the Fourteenth Amendment] and the Confrontation Clause of the Sixth Amendment . . . both guarantee to a criminal defendant . . . the right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." (punctuation omitted)).

[11] *Dawson v. State*, 283 Ga. 315, 321-22 (5) (658 SE2d 755) (2008) (punctuation omitted).

9

substantially affected in some other way."[12] But when counsel participates in a bench conference involving purely legal issues, the right to be present is "not implicated."[13]

On appeal, Robertson argues that he was impermissibly excluded from three separate bench conferences during his trial. But a review of the details of these conferences belies this contention. The first instance occurred just after defense counsel concluded a cross-examination of B. E., and the trial court informed the parties that there would be a recess for lunch. Then, after agreeing that the jury needed a lunch break, the State's prosecutor advised the court that she would only need a few minutes on redirect and stated that she had "something to approach on." Although the conference was not transcribed, from the record it appears to have been quite brief, and immediately thereafter, the prosecutor and Moore's defense counsel discussed whether defense counsel laid a proper foundation to publish some photographs B. E. had posted on Facebook.

---

[12] *Dawson*, 283 Ga. at 322 (5) (punctuation omitted).

[13] *Reeves v. State*, 309 Ga. 645, 648 (2) (847 SE2d 551) (2020); *see Brewner*, 302 Ga. at 10 (II) ("[P]re-trial hearings and bench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury instructions, ordinarily do not implicate the right to be present.").

10

During the hearing on Robertson's motion for new trial, the State's prosecutor asked Robertson's trial counsel if he recalled that bench conference, and he responded that it appeared to be something just between the prosecutor and the trial court but did not recall any further details. The prosecutor similarly could not recall definitively but guessed that the conference concerned a scheduling matter unrelated to the trial. Robertson nonetheless argues that his exclusion from this bench conference denied him his right to be present at a critical stage of trial. But—claiming only that the conference was unlikely to have been logistical—he offers nothing more than speculation as to what the conference might have concerned. And mere speculation as to what may have been discussed at a bench conference "cannot serve as the basis for the grant of a new trial."[14]

The second complained of bench conference occurred just after the State's prosecutor questioned the social worker specializing in counseling victims of sex trafficking regarding her credentials and began asking about her specific role with the agency. Robertson's trial counsel interrupted and asked to approach. The specifics of that brief conference were not transcribed, but immediately thereafter, the court sent

---

[14] *Reeves*, 309 Ga. at 648 (2) (punctuation omitted); *accord Daughtie v. State*, 297 Ga. 261, 267 (5) (773 SE2d 263) (2015).

the jury out for a recess, at which point the parties argued on the record as to whether the social worker's testimony had improperly bolstered B. E.'s credibility and, if so, whether such bolstering warranted a mistrial. And during the hearing on Robertson's motion for new trial, his trial counsel confirmed that initiating this legal argument outside the presence of the jury was, indeed, why he asked to approach. Thus, Robertson's assertion that he was impermissibly excluded from this bench conference is not supported by the record. Moreover, to the extent his concern specifically regards the brief moment his counsel approached the bench seeking permission to make his legal argument, his right to be present was not implicated.[15]

The final bench conference from which Robertson claims he was improperly excluded occurred during the testimony of a witness for his co-defendant Moore. Specifically, based on that witness's testimony on direct examination, the State's prosecutor asked to take up an issue outside the presence of the jury, and once the

---

[15] *See Reeves*, 309 Ga. at 648 (2) ("When counsel participates in a bench conference involving purely legal issues, the right to be present is not implicated"); *Hardy v. State*, 306 Ga. 654, 660 (2) (c) (832 SE2d 770) (2019) (holding that discussion of co-defendant's pretrial motions in defendant's absence involved only legal arguments and, therefore, did not violate his constitutional right to be present during all critical stages of the proceedings against him); *Pack v. State*, 335 Ga. App. 783, 784-85 (1) (783 SE2d 146) (2016) (holding that although bench conference related to jury selection, it ultimately involved a purely legal question, and thus, defendant had no right to be present).

jury recessed, the prosecutor argued that the witness had provided good character evidence and, thus, opened the door for evidence countering it. Toward the end of this argument, in which the trial court ruled that the witness's testimony did not open the door for any bad character evidence pertaining to Robertson, the court acknowledged that the State would be asking the witness about her own pending criminal charges on cross-examination. The court then took a break and immediately upon resuming the proceedings, Moore's trial counsel pleaded: "Judge I hate to do this, but I think there is a matter that we need to take up either at the bench or outside the presence of the jury at this point given what the State has just presented." A brief, off-the-record bench conference then ensued. Subsequently, the State's prosecutor began her cross-examination and, in fact, asked the witness about her own pending charges.

Again, Robertson claims that his absence from this brief conference violated his right to be present during a critical stage of the trial. But the request to approach from Moore's trial counsel, as the record shows, was related to the previous discussion regarding the introduction of character evidence and the witness's own pending criminal charges. And indeed, in its order denying Robertson's motion for new trial, the trial court concluded that counsel asked for the conference to clarify the court's legal ruling on those issues. Consequently, Robertson's right to be present

13

was not implicated.[16] Accordingly, the trial court did not err in denying Robertson's motion for new trial in this regard.

3. Robertson further claims that the trial court erred in denying his motion for a mistrial, which he lodged when the social worker who specialized in counseling victims of sex trafficking allegedly improperly bolstered the victim's credibility. Once again, we disagree.

This Court reviews a trial court's denial of a motion for mistrial for "an abuse of discretion."[17] And importantly, in doing so, we will reverse the trial court's ruling "only if a mistrial is essential to the preservation of the right to a fair trial."[18] Here, after the State's prosecutor questioned the social worker specializing in counseling victims of sex trafficking as to her credentials, the prosecutor asked her to describe the steps involved in the counseling process. The social worker then responded as follows:

> So the first step, once a case is referred to Georgia Cares, the assessment coordination team goes out into the community to either confirm or not

---

[16] *See supra* note 15 & accompanying text.

[17] *Garner v. State*, 346 Ga. App. 351, 359 (3) (816 SE2d 368) (2018).

[18] *Id.* (punctuation omitted).

confirm the case for CSEC. So what that means is the assessment coordination team has to gain evidence not only from the referral, but also from what the youth shares to see if there was indeed exchange – sexual activity exchanged for something of value. If it is a yes, then the assessment coordination team, or the team that I was a part of, will make recommendations based on what the client shares.

Shortly thereafter, the prosecutor asked the social worker to describe her specific role at the agency, and she responded as follows: "I was initially hired as an assessment coordinator, so I was the person that would go out into the community to either – well, to conduct CSEC assessment, and that is to confirm or not confirm a youth for CSEC. . . ."

At that point, Robertson's trial counsel asked to approach, and after the trial court excused the jury for a recess, counsel argued that the social worker had testified as to the ultimate issue at trial when she twice explained that the assessment coordination team—and she as a member of that team—would "confirm or not confirm" if a youth had been subjected to sex trafficking. And given this testimony, counsel further argued that a mistrial was the proper remedy. The court responded that it shared counsel's concern but that, so far, it had not heard opinions expressed

15

about "*this* case."[19] Subsequently, the State's prosecutor joined the discussion and disputed that the social worker had testified as to the ultimate issue, arguing that "confirmed" meant only that the victim was claiming to have been subjected to sex trafficking, similar to the way in which a child-molestation victim would disclose being subjected to sexual abuse to a counselor or a forensic interviewer. Ultimately, the trial court denied Robertson's motion for a mistrial, but it was concerned enough with the use of term "confirm" that when the jury returned, it provided the following curative instruction:

> Ladies and gentlemen of the jury, I find it advisable at this time to instruct you that the witness used the term "confirm or not confirm." In order to avoid any misunderstanding of you giving that terminology more weight than it should have, when the witness uses the word "confirm" in the instance that she did, that means only that a minor has reported that sex was exchanged for something of value; not that it actually did occur, but the youth did report same and nothing more.

Robertson's counsel then noted his exception, and the witness continued her testimony.

---

[19] (Emphasis supplied).

On appeal, Robertson maintains that the social worker's testimony, specifically her use of the term "confirm," improperly bolstered B. E.'s credibility. But the social worker's testimony did not constitute improper bolstering. OCGA § 24-6-620 provides that "[t]he credibility of a witness shall be a matter to be determined by the trier of fact[.]" And Robertson is correct that "[u]nder this rule, a witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth."[20] But when Georgia's appellate courts "evaluate whether testimony constitutes improper bolstering, we consider the disputed testimony in context and statements that do not directly address another witness's credibility do not constitute improper bolstering."[21]

In this case, the social worker's explanation that her job entailed confirming whether, in general, victims were claiming to have been subjected to sexual

---

[20] *Abney v. State*, 306 Ga. 448, 453 (3) (831 SE2d 778) (2019) (punctuation omitted); *accord Adkins v. State*, 301 Ga. 153, 158 (800 SE2d 341) (2017).

[21] *Abney*, 306 Ga. at 453 (3) (punctuation omitted); *see Ward v. State*, 353 Ga. App. 1, 6 (2) (a) (836 SE2d 148) (2019) ("What is forbidden is expert opinion testimony that directly addresses the credibility of the victim, i.e., 'I believe the victim; I think the victim is telling the truth,' or expert opinion testimony that implicitly goes to the ultimate issue to be decided by the jury, when such issue is not beyond the ken of the average juror, i.e., 'In my opinion, the victim was sexually abused.'" (punctuation omitted)).

trafficking did not constitute improper bolstering. Indeed, this part of her testimony did not even directly pertain to B. E.'s allegations, much less directly address B. E.'s credibility.[22] Furthermore, the trial court provided the jury with a curative instruction that the term "confirm" only meant that a minor made a report claiming to have been subjected to sexual trafficking. And we presume the jury to have followed the court's instruction.[23] Accordingly, the trial court did not abuse its discretion in denying Robertson's motion for a mistrial on the ground that the social worker improperly bolstered B. E.'s credibility.

---

[22] *See Abney*, 306 Ga. at 454-55 (3) (b) (holding that because detective did not opine on or speak directly to witness's truthfulness, detective's testimony did not constitute improper bolstering of witness's credibility); *Davis v. State*, 306 Ga. 140, 147 (3) (f) (829 SE2d 321) (2019) (concluding that detective's testimony, which "did not speak directly to [witness's] truthfulness" but instead, "involved whether aspects of [detective's] investigation lined up with information provided by" witness, did not constitute improper bolstering); *Ward*, 353 Ga. App. at 6-7 (2) (a) (finding that the testimony that victim's demeanor was consistent with common symptoms of abuse was not impermissible bolstering of victim's credibility).

[23] *See Wade v. State*, 304 Ga. 5, 10 (3) (815 SE2d 875) (2018) (holding that the jury is presumed to have followed the trial court's curative instruction); *Womac v. State*, 302 Ga. 681, 683 (2) (808 SE2d 709) (2017) (noting that "qualified jurors are presumed to follow the instructions of the trial court" (punctuation omitted)).

For all of these reasons, we affirm Robertson's convictions and the denial of his motion for new trial.

*Judgment affirmed. Mercier and Colvin, JJ., concur.*