**FOURTH DIVISION
DILLARD, P. J.,
MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 19, 2022**

# In the Court of Appeals of Georgia

A22A1100. LAWSON v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Michael Lawson on one count of aggravated child molestation. On appeal, Lawson contends the trial court erred in (1) admitting his prior convictions for impeachment purposes; (2) denying his right to be present at critical stages of his trial by excluding him from bench conferences; and (3) denying his claim that his trial counsel rendered ineffective assistance by failing to object to improper questioning by the State. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on January 11, 2011, then eleven-year-old K. L. was at her grandmother's house taking a nap when she awoke to find Lawson—who previously dated her mother and

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

was presumed to be her father—in the bedroom with her. Lawson pinned K. L. to the bed, removed her underwear, and put his penis in her vagina. After ejaculating, Lawson dressed and left the bedroom, warning K. L. not to tell anyone about what happened. But the day after the assault, K. L.'s mother noticed that she was walking oddly and seemed to be in pain. And when asked by her mother what was wrong with her, K. L. admitted her vagina was swollen and that it was painful to urinate. Her mother then asked if anyone had sexually assaulted her, and K. L. initially accused her teenaged cousin of doing so.

Immediately, K. L.'s mother took her to a hospital, and a physician conducted a sexual assault examination, during which he observed that her vagina was swollen, bruised, and contained a whitish discharge believed to be semen. Additionally, as part of the examination, the physician collected samples for DNA analysis. Shortly thereafter, an investigator from the sheriff's office collected DNA samples from K. L.'s cousin for analysis. And when forensic testing of those samples did not match the samples provided by her cousin, K. L. admitted she lied in implicating him and divulged that it was actually Lawson who sexually assaulted her. Further forensic analysis indicated that the DNA from the semen collected from K. L.'s sexual assault examination matched a DNA sample the investigator obtained from Lawson.

2

Subsequently, the State charged Lawson, via indictment, with one count of aggravated child molestation and one count of incest.[2] The case then proceeded to trial, during which the State presented the aforementioned evidence. After the State rested, Lawson informed the trial court that he wanted to testify. And at this point, the court heard argument as to whether the State could admit two of Lawson's prior convictions for impeachment purposes, ultimately ruling that the evidence was admissible. Lawson nonetheless testified and, in addition to denying any wrongdoing, provided an explanation as to how his DNA was found in K. L.'s vagina. Specifically, he claimed that the morning of the alleged incident, he and his girlfriend had intercourse at K. L.'s grandmother's house, and afterwards, he put on a pair of pajama pants while not wearing any underwear. Later, after he changed clothes, he saw K. L. wearing those same pajama pants. Then, before the State began its cross examination of Lawson, the trial court instructed the jury that Lawson's prior convictions were only being admitted for impeachment purposes. Afterwards, the State cross examined Lawson, and he acknowledged that he had previously been convicted of aggravated assault and possession of cocaine with intent to distribute.

---

[2] The State later successfully moved for an entry of *nolle prosequi* as to the incest charge in light of the fact that DNA analysis indicated Lawson and K. L. were not biological relatives.

At the conclusion of the trial, the jury found Lawson guilty on the charge of aggravated child molestation. Thereafter, Lawson obtained new counsel and filed a motion for new trial, in which he argued, *inter alia*, that his trial counsel rendered ineffective assistance. But after conducting a hearing, in which Lawson's trial counsel testified, the trial court denied Lawson's motion. This appeal follows.

1. Lawson first contends the trial court erred in admitting his prior convictions into evidence for impeachment purposes. We disagree.

OCGA § 24-6-609 (a) (1) provides, in part, that evidence an accused (who testifies) has been convicted of a crime punishable by death or imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused." Furthermore, the introduction of evidence of a prior felony conviction is "intended to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony."[3] Simply put, the introduction of evidence of a prior crime is "a general attack on the

---

[3] *Robinson v. State*, 336 Ga. App. 627, 631 (3) (785 SE2d 304) (2016) (punctuation omitted).

credibility of the witness."[4] Moreover, under our prior evidence code,[5] Georgia trial courts undertaking the balancing test to determine if a prior conviction was admissible for impeachment purposes were to consider factors including:

> (1) the kind of felony involved and its impeachment value, (2) the time of the conviction and the defendant's subsequent history, (3) the similarity between the past crime and the charged crime (lest evidence of a similar crime create an unacceptable risk of prejudice); (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.[6]

And while our current evidence code does not require trial courts to engage in this test, these factors continue to be a useful guide in making such a determination because federal courts have employed them under a prior version of the federal

---

[4] *Id.* (punctuation omitted); Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence, p. 312 (6th ed. 2018) ("Rule 609 (a) (1) concerns impeachment of a witness' truthfulness with evidence of a crime that is punishable by . . . imprisonment in excess of one year under the law which the witness was convicted.").

[5] *See* former OCGA § 24-9-84.1 (2006).

[6] *Robinson*, 336 Ga. App. at 631-32 (3) (punctuation omitted); *see Clay v. State*, 290 Ga. 822, 835-36 (3) (B) (725 SE2d 260) (2012) (explaining that five factors outline the basic concerns relevant to the required balancing in determining whether to admit a defendant's prior conviction for impeachment).

evidence rule that is substantively similar to our new evidentiary rule.[7] In any event, a trial court's decision to "admit a defendant's prior conviction under OCGA § 24-6-609 (a) (1) is reviewed for an abuse of discretion."[8]

In this matter, after hearing argument from the parties, the trial court determined the probative value of Lawson's two prior convictions outweighed any prejudicial effect. In doing so, the court noted that the prior convictions—aggravated assault and possession of cocaine with intent to distribute—were not crimes of dishonesty but they were also not similar in nature to the offense for which Lawson

---

[7] *See United States v. Preston*, 608 F2d 626, 639 n. 17 (5th Cir.1979) (discussing factors to be considered in balancing whether to admit a defendant's prior conviction for impeachment); *Robinson*, 336 Ga. App. at 632 (3) (explaining that federal courts have employed a balancing test considering several of the aforementioned factors in determining the admissibility of prior convictions for impeachment); *accord Johnson v. State*, __ Ga. App. __ (873 S.E.2d 704, 708) (2022); *see also Samuels v. State*, 335 Ga. App. 819, 823 (1) (783 SE2d 344) (2016) (noting that, given the similarity between Georgia's current Evidence Code and the Federal Rules of Evidence, it is proper that we "give consideration and great weight to constructions placed on the Federal Rules by the federal courts" (punctuation omitted)).

[8] *Robinson*, 336 Ga. App. at 631 (3); *see Jones v. State*, 352 Ga. App. 380, 388 (2) (b) (834 SE2d 881) (2019) (noting that a trial court's evidentiary rulings must be affirmed absent an abuse of discretion).

6

was being tried.[9] Additionally, while not specifically noted by the trial court, Lawson's credibility versus that of K. L. was certainly important, especially given K. L.'s initial accusation against her cousin and Lawson's attempt to explain how his semen was found inside K. L.'s vagina. Furthermore, before the State cross examined Lawson, the trial court instructed the jury that his prior convictions were only being admitted for impeachment purposes; and during its jury charge, the court further instructed that credibility and whether a witness was impeached was solely for the jury to decide. Accordingly, the trial court did not abuse its discretion in admitting Lawson's prior convictions into evidence for the purpose of generally attacking his credibility.[10]

---

[9] *See Robinson*, 336 Ga. App. at 631-32 (3) (explaining that crimes involving dishonesty are subjected to a more lenient test when determining admission for impeachment purposes but that crimes similar to the offense at issue are subjected to more scrutiny—lest evidence of a similar crime create an unacceptable risk of prejudice—when determining admission for that same purpose).

[10] *See Jones*, 352 Ga. App. at 389-91 (2) (b) (explaining that probative value of defendant's prior conviction outweighed risk of unfair prejudice when defendant's testimony that he was not responsible for attack against victim rendered his credibility central to trial's outcome and given that trial court reduced risk of unfair prejudice by instructing jury that prior conviction was being admitted solely for jury to consider in determining his truthfulness); *Jordan v. State*, 344 Ga. App. 267, 272-73 (5) (810 SE2d 158) (2018) (holding that admission of defendant's prior convictions for burglary and theft for purposes of impeachment was not abuse of discretion in prosecution for armed robbery given that defendant placed his credibility directly at

7

2. Lawson also contends the trial court erred in denying his right to be present at critical stages of his trial by excluding him from several bench conferences. Again, we disagree.

It is well settled that "[e]mbodied within the constitutional right to the courts is a criminal defendant's right to be present and see and hear all the proceedings which are had against him on the trial before the Court."[11] In fact, the right to be present is "a fundamental right and a foundational aspect of due process of law."[12]

---

issue by testifying at trial that he took no part in the armed robbery); *Robinson*, 336 Ga. App. at 631-32 (3) (holding that because credibility of defendant and victim was central issue of the case and previous convictions were not substantially similar to allegations in instant case, probative value of evidence outweighed the prejudicial effect to defendant, and therefore evidence of defendant's previous convictions were admissible for general impeachment purposes in aggravated assault, criminal damage to property, and cruelty to children prosecution); Carlson, supra note 4 p. 313 ("Once a criminal defendant chooses to testify, he places his credibility in issue as does any witness. . . . Felonies not involving dishonesty are admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." (footnotes omitted)).

[11] *Ward v. State*, 288 Ga. 641, 645 (4) (706 SE2d 430) (2011) (citation and punctuation omitted); *accord Brewner v. State*, 302 Ga. 6, 9 (II) (804 SE2d 94) (2017); *Robertson v. State*, 359 Ga. App. 326, 330 (2) (857 SE2d 485) (2021); *see* Ga. Const. Art. I, Sec. I, Par. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state.").

[12] *Hampton v. State*, 282 Ga. 490, 491-92 (2) (a) (651 SE2d 698) (2007); *accord Robertson*, 359 Ga. App. at 330 (2); *see also Tennessee v. Lane*, 541 U.S. 509,

8

This fundamental right "attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure."[13] And Georgia's appellate courts have "determined that a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way."[14] But when counsel participates in a bench conference involving purely legal issues, "the right to be present is not implicated."[15]

In this case, Lawson argues he was impermissibly excluded from numerous bench conferences and was, therefore, denied his right to be present at critical stages

---

523 (IV) (124 SCt 1978, 158 LE2d 820) (2004) ("The Due Process Clause [of the Fourteenth Amendment] and the Confrontation Clause of the Sixth Amendment . . . both guarantee to a criminal defendant . . . the right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." (punctuation omitted)).

[13] *Dawson v. State*, 283 Ga. 315, 321-22 (5) (658 SE2d 755) (2008) (punctuation omitted); *accord Robertson*, 359 Ga. App. at 330-31 (2).

[14] *Dawson*, 283 Ga. at 322 (5) (punctuation omitted); *accord Robertson*, 359 Ga. App. at 331 (2).

[15] *Reeves v. State*, 309 Ga. 645, 648 (2) (847 SE2d 551) (2020); *accord Robertson*, 359 Ga. App. at 331 (2); *see Brewner*, 302 Ga. at 10 (II) ("[P]re-trial hearings and bench conferences pertaining to purely legal issues, such as the admissibility of evidence or jury instructions, ordinarily do not implicate the right to be present.").

9

of trial. But none of the bench conferences were transcribed, and during his motion for new trial, Lawson's trial counsel only offered guesses as to what they entailed, leaving Lawson with nothing more than speculation as to what the conferences might have concerned. And importantly, mere speculation as to what may have been discussed at a conference "cannot serve as the basis for the grant of a new trial."[16] Nevertheless, a review of the details of the subject conferences—to the extent anything can be gleaned in the absence of transcription—belies Lawson's contention.

The first bench conference occurred after *voir dire* but before the parties began selecting the jury. Specifically, upon stating the proceedings were back on the record, the trial court requested that counsel approach, and a very brief conference ensued, after which the court explained on the record that it would give the preliminary charge while counsel were reviewing their notes taken during *voir dire*. Later, after jury selection concluded and the trial court explained to the prospective jurors that the parties would finish with their selections and then many pool members would be excused, the court conducted a second bench conference before the names of the selected jurors were called. During the hearing on Lawson's motion for new trial, his

---

[16] *Reeves*, 309 Ga. at 648 (2) (punctuation omitted); *accord Daughtie v. State*, 297 Ga. 261, 267 (5) (773 SE2d 263) (2015).

10

trial counsel testified that she could not recall if she discussed bench conferences with Lawson or what the first conference involved. Counsel was not asked about the second conference.

The lack of a transcript or trial counsel's recollection notwithstanding, Lawson argues those conferences involved jury-selection issues and that he should have been included because "proceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present."[17] But even if we assumed, for the sake of argument, that Lawson's speculation is correct, "[t]he right to be present is waived if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver."[18] Here, nothing in the transcript indicates that Lawson was absent during any part of *voir dire* and, thus, he was in a position to hear any arguments or issues pertaining to jury selection. And neither Lawson nor his counsel

_____

[17] *Zamora v. State*, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012) (punctuation omitted); *see Brewner*, 302 Ga. at 11 (II) (noting that defendant has a right to be present when jury selection issues are being decided).

[18] *Brewner*, 302 Ga. at 11 (II) (punctuation omitted).

11

voiced any objection to Lawson's exclusion from these particular bench conferences. Consequently, Lawson acquiesced in his own absence.[19]

The third bench conference occurred at the conclusion of jury selection, with the trial court remarking as follows: "Actually, jury selection took a lot less time than I thought it was going to take. Why don't we do this. Why don't we have you—let me let counsel approach, please. Let me get some real input quick." Based on these comments, the court's request for counsel to approach seems to have concerned scheduling. Similarly, just before the State rested, and then just after it rested, the trial court held additional bench conferences that appear to have concerned scheduling issues and a question for the court reporter. In fact, during the hearing on his motion

---

[19] *Nesby v. State*, 310 Ga. 757, 759-61 (2) (853 SE2d 631) (2021) (concluding that even if defendant's right to be present was implicated by bench conference that occurred during voir dire, defendant was in court before and after bench conference, was in a position to hear the issues to which it related and discussed those issues with his counsel, raised no objection to counsel's conduct or trial court's decision on the issues, and, thus, acquiesced to his absence); *Murphy v. State*, 299 Ga. 238, 242 (2) (787 SE2d 721) (2106) (holding that when the appellant was aware of the announced procedure for selecting a jury, witnessed the bench conferences, and heard the discussions concerning the challenged members' qualifications and the judge's rulings, but remained silent, she acquiesced in her absence from the bench conferences); *Jackson v. State*, 278 Ga. 235, 237 (3) (599 SE2d 129) (2004) (holding that the defendants acquiesced in the proceedings occurring in their absence "when their counsel made no objection and defendants thereafter remained silent after the subject was brought to their attention").

for new trial, Lawson's trial counsel testified that she believed the latter conference involved scheduling. And as the Supreme Court of Georgia has held, a defendant's absence from bench conferences involving logistical matters—such as the order in which witnesses would be called and when to take breaks in the trial proceedings—does not violate the constitutional right to be present.[20]

As to the remaining bench conferences at issue, none impacted Lawson's right to be present. The first conference occurred when the State was questioning the sheriff's office investigator and asked if he had the permission forms to collect DNA samples from Lawson and K. L.'s cousin. After the investigator responded affirmatively, the State asked to approach, a short bench conference ensued, and then the State tendered the two forms into evidence.

The next conference took place during Lawson's cross examination of the Georgia Bureau of Investigation's forensic biologist after his counsel asked the

---

[20] *See Bradford v. State*, 299 Ga. 880, 882-83 (4) (b) (792 SE2d 684) (2016) (noting that if a bench conference only concerns logistical issues, then a defendant's right to be present is not violated); *Heywood v. State*, 292 Ga. 771, 773-74 (3) (743 SE2d 12) (2013) (holding that defendant's absence from bench conferences involving logistical matters such as the order in which witnesses would be called and when to take breaks in the trial proceedings did not violate his constitutional right to be present); *Zamora*, 291 Ga. at 518 (7) (b) (same); *Parks v. State*, 275 Ga. 320, 324 (3) (565 SE2d 447) (2002) (same).

witness when she first tested the DNA samples collected during K. L.'s sexual assault examination for semen. The State then asked to approach the bench, and following a brief conference, Lawson's counsel repeated her question.

A few moments later, following the conclusion of a recess for lunch and immediately before the State called its forensic interviewer to testify, the trial court asked counsel to approach. After the conference concluded, the court explained to the jury that the next witness's testimony would also entail viewing three fairly lengthy video recordings of interviews with K. L.

Later, during the defense's case, Lawson's counsel was questioning a friend of Lawson's family about her relationship with K. L.'s mother when the State objected as to relevance, resulting in another brief bench conference. And at its conclusion, the trial court overruled the objection, and Lawson's counsel repeated her question.

Finally, the last bench conference at issue occurred during Lawson's testimony, when his counsel asked him a question about what K. L. and her mother said to him as they were leaving the hospital following K. L.'s sexual assault examination. The State lodged a hearsay objection, and the trial court held a short bench conference, after which the trial court allowed the question.

During the hearing on Lawson's motion for new trial, his trial counsel did not specifically recall any of these conferences but, based on reading the transcript and the context in which they occurred, she guessed the conference just before the testimony of the forensic interviewer concerned whether she had any objections to the State playing the recordings of the interviews. She further surmised that the conference following the State's objection to her question to Lawson's family friend about her relationship with K. L.'s mother concerned—not surprisingly—the State's objection to that question. Given his counsel's speculation and based on what can be discerned from the transcript, each of these particular bench conferences appear to have involved legal argument on evidentiary issues, and consequently, Lawson's right to be present was not implicated.[21]

---

[21] *See Reeves*, 309 Ga. at 648 (2) ("When counsel participates in a bench conference involving purely legal issues, the right to be present is not implicated"); *Hardy v. State*, 306 Ga. 654, 660 (2) (c) (832 SE2d 770) (2019) (holding that discussion of co-defendant's pretrial motions in defendant's absence involved only legal arguments and, therefore, did not violate his constitutional right to be present during all critical stages of the proceedings against him); *Robertson*, 359 Ga. App. at 331-33 (2) (concluding that defendant's right to be present was not implicated when bench conferences involved only legal arguments); *Pack v. State*, 335 Ga. App. 783, 784-85 (1) (783 SE2d 146) (2016) (holding that although bench conference related to jury selection, it ultimately involved a purely legal question, and thus, defendant had no right to be present).

3. Finally, Lawson contends the trial court erred in denying his claim that his counsel rendered ineffective assistance when she failed to object to improper questioning from the State during his testimony. Once again, we disagree.

To evaluate Lawson's claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[22] which requires him to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[23] Furthermore, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[24] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[25] And importantly,

---

[22] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[23] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[24] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[25] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by

16

decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[26] Moreover, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[27]

In this case, during the State's cross examination of Lawson, the prosecutor asked him about his two prior convictions, which Lawson acknowledged. Immediately following that acknowledgment, the prosecutor asked: "And do you understand that under Georgia law that means that you're not entitled to belief; do you understand that?" Defense counsel did not object to this question, and Lawson responded that he was unaware of this. The State asked no additional questions.

---

whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[26] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

[27] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014); *accord Huggins v. State*, 365 Ga. App. 450, 451 (868 SE2d 840) (2022); *see Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

17

During the hearing on his motion for new trial, Lawson's trial counsel was questioned about this exchange but had no recollection of it. Now, Lawson argues the State prosecutor's question misstated the law and constituted an improper attack on his credibility; and as a result, his trial counsel rendered ineffective assistance by failing to object. Although we are with Lawson that the State's question was not an accurate statement of the law,[28] it is of no consequence. Indeed, even if trial counsel's failure to object constituted deficient performance, Lawson has not shown that the error was "so serious that [it] likely affected the outcome of the trial."[29] As we have previously noted, satisfaction of this test is "a difficult endeavor."[30] And simply because a defendant has "shown that [his] trial counsel performed deficiently does not lead to an automatic conclusion that [he] was prejudiced by counsel's deficient performance."[31] Here, K. L. testified that Lawson sexually assaulted her, and the

---

[28] *See supra* note 3 & accompanying text.

[29] *Brown v. State*, 307 Ga. 24, 33 (6) (834 SE2d 40) (2019) (punctuation omitted); *accord Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019).

[30] *Brown*, 307 Ga. at 33 (6) (punctuation omitted); *accord Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019).

[31] *Brown*, 307 Ga. at 33 (6) (punctuation omitted); *accord Davis,* 306 Ga. at 144 (3).

sexual assault examination at the hospital indicated bruising to her vagina consistent with the manner of sexual abuse she described. Significantly, the DNA from semen found inside K. L.'s vagina during the sexual assault examination matched DNA samples collected from Lawson by law enforcement. Given these particular circumstances, the evidence supporting Lawson's conviction was substantial, and, therefore, he has failed to demonstrate a reasonable probability that, but for the alleged deficiency, the trial would have resulted in a different outcome.[32] Thus, the trial court did not err in denying his claim of ineffective assistance of counsel.

For all these reasons, we affirm Lawson's conviction and the denial of his motion for new trial.

*Judgment affirmed. Mercier and Markle, JJ., concur.*

---

[32] *Newman v. State*, 309 Ga. 171, 183-84 (2) (i) (844 SE2d 775) (2020) (concluding that even if trial counsel rendered deficient performance in failing to object to defendant's three prior convictions, in light of overwhelming evidence of guilt, defendant could not show prejudice); *Brown*, 307 Ga. at 33 (6) (a) (holding that even if trial counsel performed deficiently by failing to object when investigator's testimony amounted to improper character evidence, defendant failed to prove requisite prejudice for claim of ineffective assistance of counsel, given overwhelming evidence of defendant's guilt); *Scales v. State*, 356 Ga. App. 164, 167-68 (2) (a) (846 SE2d 418) (2020) (finding that, given overwhelming evidence, any error by defense counsel in failing to object to the State improperly placing defendant's character into evidence did not prejudice defendant, and thus, could not amount to ineffective assistance).